## EVANS v. GORMAN.

(Circuit Court, E. D. Arkansas, E. D.   May 9, 1902.)

### No. 107.

1. COURTS—FEDERAL COURTS—JURISDICTION—INJUNCTION—RESTRAINT OF JUDICIAL SALE.

Under Rev. St. § 720, prohibiting the federal courts from enjoining proceedings in state courts, which is declaratory of a rule of comity, a federal court has no power to enjoin a sale of estate lands ordered by the Arkansas probate court to pay judgments against the estate; such court, under Const. Ark. art. 7, § 34, being a court of record having exclusive jurisdiction of the estates of deceased persons, the lands of which estates, under Sand. & H. Dig. Ark. § 80, are estate assets, subject to the payment of debts; and this is true even though the injunction suit is ancillary to a suit to set aside such judgments for fraud, commenced after the sale has been ordered.

2. ADMINISTRATORS AND EXECUTORS—SALE OF ESTATE PROPERTY—SUIT TO ENJOIN—PARTIES.

Judgment creditors of an estate are indispensable parties to a suit to enjoin the administrator from selling estate real property for the payment of such judgments.

3. SAME—PARTIES—MISJOINDER.

Where the jurisdiction of the federal court to grant an injunction is based on a diversity of citizenship, the omission of a necessary party, who cannot be made a party without defeating the jurisdiction of the court, requires a dismissal of the cause.

In Equity.   On application for temporary injunction.

The defendant objects to the granting of the temporary injunction upon two grounds: First, that it comes within the inhibition of section 720, Rev. St.; and, second, that the bill is demurrable also upon the ground that the judgment creditors are not made parties to this bill, although they are indispensable parties. The bill alleges that the complainant, William E. Evans, is a citizen and resident of the state of Missouri, and that the defendant, Henry P. Gorman, is a citizen and resident of the state of Arkansas; that the complainant, one of the heirs at law of Hiram Evans, deceased, heretofore filed in this court a bill of complaint against William N. Wilkerson and Thomas H. Chilton, charging that a certain judgment of the probate court of St. Francis county, Ark., allowing a claim of about $4,000 in favor of said parties against the estate of Hiram Evans, deceased, was obtained by fraud, and through conspiracy and collusion with one James Evans, the then administrator of said estate, and is therefore illegal and invalid in equity, and is a lien upon complainant's interest as heir at law of said Hiram Evans, deceased, in the real estate described in said bill, in which bill the complainant asked that the judgment of said probate court be set aside and held for naught. It is also alleged that the time in which the defendants are required to answer has not yet expired, and they have not entered appearances thereto. It is also alleged that, after the filing of the bill above referred to by the complainant, Mary E. Jackson, Nannie A. Hoshall, and Sallie J. McDaniel, who are also heirs at law of the said Hiram Evans, deceased, and equally interested with complainant in the real estate described in said bill, filed their original bill of complaint in this court against George M. Taylor and several other parties, alleging that the said defendants, by fraud, collusion, and conspiracy between themselves and with one John Evans and James Evans, administrator of the estate of Hiram Evans, deceased, procured judgments in the probate court of St. Francis county, Ark., allowing against the said estate certain claims aggregating about $3,000, which claims are alleged to have been the debts of said John Evans, and not of said Hiram Evans, deceased, and to have been contracted long after the death of said Hiram Evans; and in said bill it is alleged that

the said judgments were wholly beyond the jurisdiction of said probate court to render, and it was asked that said judgments be set aside, and declared not to be a lien on the real estate described therein, which is the same real estate described in complainant's bill above referred to; that the bill of Mary E. Jackson and others is still pending, and the time within which the defendants are required to answer has not yet expired, and they have not entered their appearances thereto. Complainant adopts the allegations of the bill last referred to, and alleges their truthfulness. The bill further alleges that the said James Evans, administrator of the estate of Hiram Evans, deceased, died on or about the 23d day of December, 1896, without having fully settled said estate, and that at the time of his death he had in his possession personal assets belonging to said estate to the amount of about $10,000; that thereupon the said probate court appointed the defendant, Henry P. Gorman, administrator de bonis non of said estate, who duly qualified, and has been acting ever since, but he has wholly failed to pursue and recover the aforesaid personal assets belonging to said estate in the hands of James Evans, administrator, at the time of his death; that about the 21st day of July, 1897, and before the matters complained of in the bills of complainant and Mary E. Jackson and others were known or discovered, the said Gorman presented his petition to the probate court of St. Francis county, wherein he erroneously averred that by reason of the judgments allowing the claims charged to be illegal and fraudulent in the bills above referred to there was not sufficient personal property in his hands to pay said judgments, whereupon the said probate court granted him an order authorizing him to sell the real estate described in the bills of complainant and Mary E. Jackson and others, which action of the probate court became by the law of the state a judgment, and beyond the control of said court after the expiration of the term at which it was rendered, and could not be altered, amended, or vacated; and that none of the heirs at law of the said Hiram Evans, deceased, being parties to said proceedings, could appeal from said judgment, or have a writ of certiorari thereon. It is further alleged that no sale was ever made under said judgment of the probate court, and on the 15th day of January, 1900, the said Gorman presented a petition asking the probate court to name another day for the sale of said real estate, and said court granted said petition, and designated Wednesday, June 4, 1902, and that the defendant is now preparing to make the sale on that day, and will do so unless he is restrained and enjoined; that the said probate court was without authority to entertain the petition or make the order of sale, for the reason that the said claims were created long after the death of the said Hiram Evans, deceased; and that the order of said probate court made on July 21, 1897, was procured wholly by false and fraudulent representations, and is, therefore, null and void. It is alleged that there is now in the hands of the defendant, as administrator, more than sufficient money, or its equivalent, to fully pay all claims and demands against said estate of Hiram Evans, deceased, other than those mentioned in the bills of complainant and Mary E. Jackson, Nannie A. Hoshall, and Sallie J. McDaniel, above referred to, which are alleged to be fraudulent, fictitious, and void, and that, if the issues of said bills be determined in favor of complainants therein, a sale of said real estate will be unnecessary, and the cost of making the sale will be a needless expense and charge against said estate, and will operate to diminish the interest of complainant in the assets thereof; and that such sale will cast a cloud upon the title of complainant and the other heirs at law in the real estate mentioned, and will hinder and embarrass them in recovering the same, and will result in a multiplicity of suits, and cause them other irreparable injury and damage, for which they can have no adequate remedy at law; and that the probate court of St. Francis county cannot, under the law of the state, entertain any complaint which the complainant may address to it. The prayer of the bill is that, pending the determination of the bills heretofore filed by the complainant and Mary E. Jackson, Nannie A. Hoshall, and Sallie J. McDaniel, the said defendant, as administrator, be temporarily enjoined from selling or attempting to sell any part of the lands in controversy under the order of the probate court of St. Francis county; and that upon final

hearing of said bills, if the issues be decided in **favor of the complainants,** that said temporary injunction be made perpetual and absolute.

G. B. Webster and J. R. Beasly, for complainant.
Norton & Prewitt and R. W. Nicholls, for defendant.

TRIEBER, District Judge. Under our system of government, actions in which there is a diversity of citizenship between the plaintiff and defendant may be prosecuted either in the state or national courts. While both courts are practically governed by the same rules of law, yet, having been created by different sovereignties, they are foreign to each other. These courts are of equal dignity, and possess concurrent jurisdiction. Upon principles of comity, and to prevent an unseemly conflict between these courts, the second congress of the United States, by way of amendment to the judiciary act of 1789, enacted that no writ of injunction shall be granted by a national court to stay proceedings in any court of a state. Section 5, Act March 2, 1793 (1 Stat. 335). This provision, with some amendments, which are not material to this action, has been in full force ever since, and is section 720 of the Revised Statutes. As a matter of fact, this act is merely declaratory of a rule of comity which has governed courts from time immemorial. In Peck v. Jenness, 7 How. 612, 624, 12 L. Ed. 841, the court say:

"It is a doctrine of law too long established to require a citation of authorities that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and, whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity; for, if one may enjoin, the other may retort by injunction, and thus the parties be without remedy, being liable to process for contempt in one if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin or any other process, for this would produce a conflict extremely embarrassing to the administration of justice. In the case of Kennedy v. Earl of Cassilis, Lord Eldon at one time granted an injunction to restrain a party from proceeding in a suit pending in the court of sessions of Scotland, which, on more mature reflection, he dissolved, because it was admitted, if the court of chancery could in that way restrain proceedings in an independent foreign tribunal, the court of sessions might equally enjoin the parties from proceeding in chancery, and thus they would be unable to proceed in either court. The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum." 7 How. 624, 625, 12 L. Ed. 841.

Of course, it does not apply to suits commenced in the state courts after proceedings had been instituted in the national courts. Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497; Fisk v. Railroad Co., 10 Blatchf. 518, Fed. Cas. No. 4,830. It is a rule of universal application, even in the absence of a statute, that, between courts of concurrent jurisdiction, the court which first acquires jurisdiction of the controversy or of the res should be permitted to retain it until the controversy is decided, and the res discharged from its control.

Mr. Justice Campbell, in speaking for the supreme court in Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028, said:

"It forms a recognized portion of the duty of this court to give preference to such principles and methods of procedure as shall serve to conciliate the distinct and independent tribunals of the states and of the Union, so that they may co-operate as harmonious members of a judicial system coextensive with the United States, and submitting to the paramount authority of the same constitution, laws, and federal obligations." 20 How. 595, 15 L. Ed. 1028.

The authorities on this question are so numerous, and there is so little conflict among them, that it is unnecessary to make copious quotations from them, or cite many of them. A few, which are most in point, will suffice. Ableman v. Booth, 21 How. 506, 16 L. Ed. 169; Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257; Haines v. Carpenter, 91 U. S. 254, 23 L. Ed. 345; Dial v. Reynolds, 96 U. S. 340, 24 L. Ed. 644; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390; Bank v. Stevens, 169 U. S. 432, 18 Sup. Ct. 403, 42 L. Ed. 807; U. S. v. Parkhurst-Davis Mercantile Co., 176 U. S. 317, 20 Sup. Ct. 423, 44 L. Ed. 485; Gates v. Bucki, 4 C. C. A. 116, 53 Fed. 961; Phelps v. Association, 50 C. C. A. 339, 112 Fed. 453; Whitney v. Wilder, 4 C. C. A. 510, 54 Fed. 554.

Probate courts in the state of Arkansas are constitutional courts of record, with exclusive jurisdiction over the estates of deceased persons. Article 7, § 34, Const. Ark. Upon the appointment of the administrator by the probate court, all the personal estate of the intestate immediately vests in the administrator as the agent of the court, and for the payment of debts the statute specially provides that "lands shall be assets in the hands of the executor or administrator and shall be deemed in their possession and subject to their control for the payment of debts." Section 80, Sand. & H. Dig. Ark.

In Whitney v. Wilder, supra, it was sought by the legatee to enjoin an administrator, acting under the authority of the probate court of Louisiana, from distributing funds to the heirs at law, but the circuit court of appeals for the Fifth circuit, reversing the court below, held that:

"The prohibition of this statute [section 720, Rev. St.] extends to all cases over which the state court first obtains jurisdiction, and applies not only to injunctions aimed at the state court itself, but also to parties before the court, its officers or litigants therein."

In Haines v. Carpenter, supra, Mr. Justice Bradley, speaking for the court, says:

"In the first place, the great object of the suit is to enjoin and stop litigation in the state courts, and to bring all litigated questions before the circuit court. This is one of the things which the federal courts are prohibited from doing. By the act of March 2, 1793, it was declared that the writ of injunction shall not be granted to stay proceedings in a state court. This provision is repeated in section 720, Rev. St., and extends to all cases except where otherwise provided by the bankrupt law." 91 U. S. 257, 23 L. Ed. 345.

Counsel for the complainant insist that the rule established in Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619, 28 L. Ed. 547; Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, 32 L. Ed. 630; Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870; Robb v.

Vos, 155 U. S. 13, 15 Sup. Ct. 4, 39 L. Ed. 52,—permits this court to grant the relief prayed in the case at bar, but a careful examination of these cases and those following them will show that they were all bills to annul judgments or decrees of state courts on the ground of fraud, after they had been disposed of by those courts. In none of those cases did the court violate any rule of comity, nor was an injunction allowed in any of them except Marshall v. Holmes, and in that case the injunction was to restrain the defendant from enforcing the judgments fraudulently obtained. That injunction was only granted after the state court had rendered its final judgment, and the defendant, the judgment creditor in the state court, was the only one who could have executed them. The judgments having been held void by the federal court sitting in chancery, he was enjoined from issuing execution thereon; but in the case at bar it is the court which orders its agent, the administrator, to make the sale, and the entire matter is within the jurisdiction and under the control of the probate court of St. Francis county.

But it is urged that the bill charges that the judgments of the probate court, to pay which the administrator has been directed to sell the lands, were fraudulently obtained, and without jurisdiction, and that the other bills described in this bill were filed to set aside these judgments, and that this bill is merely ancillary to prevent a sale of the lands while the other actions are pending and undetermined. All the facts now set up in this bill existed and were known to complainant at the time the original bills were filed. It is conceded that, had this injunction been asked in the original bills, it could not have been granted; but it is ingenuously urged that, this court having obtained jurisdiction on the original bills to set aside the judgments of the probate court, it may now, in this proceeding, grant the injunction as ancillary to the other bills, for unless the administrator, it is urged, is restrained from selling the lands until the other suits to annul the fraudulent judgments are determined, there will be nothing left for the complainant, if it should finally be determined that the judgments of the probate court were void, and should be set aside. Courts cannot assume jurisdiction by such indirect methods. A litigant cannot split up his cause of action in this manner for the purpose of conferring jurisdiction which otherwise would not exist. Courts of equity determine all matters known at the time the suit was instituted in one controversy, and, if no jurisdiction exists when the bill is filed, it cannot be conferred by resorting to the filing of an ancillary bill and setting up facts existing and known to exist at the time the original suits were instituted. Perhaps, if the order of the probate court, directing the administrator to sell the real estate of the intestate for the payment of these debts, had been made after the filing of the original bills in this court, and after this court had obtained jurisdiction, the result might have been different; but as the bill in the case at bar does not show such a state of facts, it is unnecessary to determine that question.

As to the other question raised by the demurrer to the bill,—that the judgment creditors, for the payment of whose judgments the lands are ordered to be sold by the administrator, are indispensable par-

ties,—that must also be sustained. The administrator is merely a naked trustee. He is the agent of the court in winding up the estate of the deceased. The judgment creditors for whose benefit this land is to be sold are the real parties in interest, and therefore are indispensable parties. How can this court pass upon their rights without having them before it? Would that not be depriving them of property without due process of law, within the constitutional inhibition? It is settled that a court of equity can render no decree without having all necessary parties before it; and if, as was admitted in the argument, those creditors cannot be made parties without depriving the court of jurisdiction on account of their citizenship, the bill must be dismissed. Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Barney v. Baltimore, 6 Wall. 280, 18 L. Ed. 825; Cole Silver Min. Co. v. Virginia & G. H. Water Co., 1 Sawy. 685, Fed. Cas. No. 2,990; Alexander v. Hornor, 1 McCrary, 634, Fed. Cas. No. 169.

The demurrer to the bill must be sustained, and the injunction refused.