## GRAYSONIA-NASHVILLE LUMBER CO. v. GOLDMAN.

(Circuit Court of Appeals, Eighth Circuit. December 4, 1917. Rehearing Denied January 28, 1918.)

### No. 4959.

1. GUARANTY ⟵⟶36(2)—CONSTRUCTION OF CONTRACT.

A contract by a corporation "to guarantee the principal and interest on the bonds" of another corporation, under the evidence in this case, *held* a guaranty of payment of the bonds, and not merely of their collection.

---

⟵⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CORPORATIONS ☞388(2)—CONTRACTS—DEFENSE OF ULTRA VIRES—ESTOPPEL.

A lumber company made a contract of guaranty of the bonds of a railroad company which was owned by the same stockholders. It also received and used in its own business the greater part of the proceeds of the bonds. Both were Arkansas corporations. *Held*, that under the law of the state as established by decisions of its Supreme Court, which were binding on the federal courts, the lumber company could not plead the defense of ultra vires to its contract of guaranty.

Appeal from the District Court of the United States for the Western District of Arkansas; F. A. Youmans, Judge.

Suit by Alvin D. Goldman, trustee, against the Nashville Lumber Company and the Graysonia-Nashville Lumber Company. Decree for complainant, and the last-named defendant appeals. Affirmed.

G. T. Priest, of St. Louis, Mo. (T. E. Francis and Boyle & Priest, all of St. Louis, Mo., on the brief), for appellant.

G. B. Rose, of Little Rock, Ark. (W. E. Hemingway, D. H. Cantrell, J. F. Loughborough, and V. M. Miles, all of Little Rock, Ark., on the brief), for appellee.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER, District Judges.

CARLAND, Circuit Judge. Appellant has appealed from a decree of foreclosure rendered against it and the Nashville Lumber Company, hereafter called "Lumber Company." The Lumber Company declined to join in the appeal and a severance was granted. The facts as they appear in the record are as follows: The Lumber Company and the Memphis, Paris & Gulf Railroad Company, hereafter called "Railroad Company," are corporations organized under the laws of the state of Arkansas. The line of the Railroad Company ran from Nashville to Ashdown in said state. The two corporations formed the usual combination of sawmill and Railroad Company in the timber country. The stock of each corporation was owned by the same individuals in practically the same proportions. W. W. Brown was president of the Railroad Company and vice president of the Lumber Company, in 1907–08. J. W. Bishop was secretary of both companies.

In December, 1907, both companies were in need of money and were willing to put up their respective properties as security for a loan. Mr. Brown went to the city of St. Louis and talked with appellee, who was then president of the Lesser-Goldman Cotton Company, hereafter called "Cotton Company," and as a result thereof on December 5, 1907, the Cotton Company entered into a contract with the Lumber Company, Mr. Brown signing the contract in behalf of the Lumber Company as vice president, whereby the Cotton Company agreed to purchase the bonds of the Railroad Company to the amount of $420,000 at 80 cents on the dollar. At the time this contract was entered into no bonds had been issued, and nothing was said in the contract as to who should be regarded as the vendor of the bonds. The contract, however, contained the following language: "The party of the second part (Lumber Company) agree to guarantee the principal and interest on the bonds." Jan-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

uary 3, 1908, the stockholders of the Railroad Company authorized the issuance of $420,000 of the bonds of the Railroad Company to be payable on January 1, 1918, at the election of the Railroad Company, or if not paid on that day, to be paid on the 1st day of January, 1928, with the privilege on the part of the Railroad Company to redeem the bonds at any time after January 1, 1918. The bonds were to bear interest at 6 per cent. per annum, payable semiannually at the office of the Mercantile Trust Company in the city of Little Rock, Ark. At the same time it was resolved that the president or vice president and the secretary or assistant secretary of the Railroad Company be authorized and directed in the name and on behalf of the company to execute, acknowledge, and deliver to Alvin D. Goldman, as trustee (appellee), a mortgage and deed of trust to be dated January 1, 1908, mortgaging all of the railroad's franchises, equipment, and other property and income then owned by said company for the purpose of securing the payment of said issue of bonds. The bonds were issued and the deed of trust executed as provided in the resolution.

These bonds were purchased by the Cotton Company in pursuance of the contract of December 5, 1907. The deed of trust executed and delivered provided that if default should be made in the payment of any installment of interest on any of the bonds when and as the same should become payable, and such default should continue for the space of six months, the majority in amount of the owners of the bonds should have the authority to declare the whole amount of the bonds due and payable and the trustee should have the right and authority to proceed to protect his rights and the rights of the bondholders by a suit in equity for the foreclosure of said trust deed for interest or for principal and interest and for the enforcement of any other appropriate legal or equitable remedy as the trustee should deem most effectual in support of his rights or duties under the trust deed. On January 3, 1908, the directors of the Lumber Company adopted a resolution authorizing the issuance of bonds of the Lumber Company in the amount of $750,000, and also authorizing the president or vice president and the secretary or assistant secretary of said Lumber Company to execute, acknowledge, and deliver to Alvin D. Goldman, trustee (appellee), a deed of trust, to be dated the 1st day of January, 1908, mortgaging, pledging, and hypothecating all of the property of the Lumber Company then owned by it or thereafter to be acquired, except its stock of lumber and merchandise kept for sale for the purpose of securing the payment of said issue of bonds. The property covered by this trust deed is the property in controversy, and the trust deed covering the same is the instrument which the decree of the court below ordered to be foreclosed. The resolution which authorized the issuance of bonds by the Lumber Company and the trust deed to secure the same were preceded by the following preamble which is set forth in the deed of trust:

"Whereas, the Memphis, Paris & Gulf Railroad Company has issued its certain series of mortgage bonds numbered 1 to 420 inclusive, each for the sum of one thousand dollars and aggregating a total amount of four hundred and twenty thousand dollars; and

"Whereas, this company has purchased the said bonds and has contracted

to sell the same to the Lesser-Goldman Cotton Company; and

"Whereas, it is contemplated that this company will require funds with which to purchase other timbered lands, and possibly to make improvements upon its plant; and

"Whereas, by the terms of the contract between this company and the said Lesser-Goldman Company this company is to guaranty the payment of the said bonds of the said Memphis, Paris & Gulf Railroad Company, and also the payment of all interest thereon as it matures, and also the compliance by said Memphis, Paris & Gulf Railroad Company with all the terms of the deed of trust or mortgage securing the payment of said bonds."

And the resolutions themselves which were incorporated in the deed of trust contained the following language:

"Four hundred and twenty of said bonds shall immediately be certified by the trustee and deposited with the said Mercantile Trust Company, which shall hold the same as collateral security for the payment of the four hundred and twenty bonds of the Memphis, Paris & Gulf Railroad Company hereinbefore referred to, and for the performance of all the conditions and covenants of the mortgage or deed of trust securing the said bonds; and any default in the payment of said bonds of the Memphis, Paris & Gulf Railroad Company, or any default in complying with any of the terms and conditions of the mortgage securing the said bonds, shall be deemed a default under the terms of the instrument, and shall entitle the trustee herein to the same rights and remedies which he would have in case a default should be made in the payment of the bonds hereby secured, or the coupons thereon, or in the performance of the covenants and conditions of this indenture. * * *

"The said lumber company shall maintain upon its property insurance in a company satisfactory to the trustee to the amount of at least forty-two thousand dollars on its mill plant and 85 per cent. of the stock of lumber on hand; the policies of insurance to be made payable to the trustee, with the standard mortgage clause thereto attached, protecting the trustee and the bondholders against forfeiture by reason of breaches on the part of the lumber company.

"In case of any loss under said policies of insurance the same shall be paid to the said trustee, who shall deposit the same in the said Mercantile Trust Company."

The same remedies in behalf of the bondholder were given in the trust deed of the Lumber Company as in the trust deed of the Railroad Company. The Railroad Company defaulted in the payment of interest on its bonds, and the Lumber Company did not comply with the provision in regard to insurance, whereupon the trustee at the request of the bondholders declared the principal of the bonds due and payable. It does not appear that any bonds were ever issued by the Lumber Company, but this is immaterial, as no one is before the court who holds or owns any of said bonds or is asking for their payment. The Cotton Company paid $336,000, for the bonds of the Railroad Company. The Lumber Company received $236,000 of this amount, and the Railroad Company $100,000. The Lumber Company gave its notes to the Railroad Company for the $236,000, but these notes were subsequently canceled by the Railroad Company as they well might be; the claim that the corporations were different legal entities being in a court of equity a mere fiction. On December 9, 1911, the Lumber Company by special warranty deed conveyed all of the mortgaged property to appellant. In this deed appears the following language:

"This conveyance is also made subject to the instrument executed by the Nashville Lumber Company to A. D. Goldman, trustee, whereby certain bonds of the Memphis, Paris & Gulf Railroad Company were guaranteed."

[1] On the above state of facts counsel for appellant contends that the guaranty of the Lumber Company was a guaranty of the collection of the amount due on the railroad bonds and not a guaranty of payment, and therefore the appellee was not entitled to a foreclosure of the Lumber Company mortgage until he had exhausted his remedy against the Railroad Company. The contract between the Lumber Company and the Cotton Company contained the agreement on the part of the Lumber Company "to guarantee the principal and interest on the bonds." When the corporation itself came to perform such agreement by passing the resolutions of January 3, 1908, it recited:

"By the terms of the contract between this company and the said Lesser-Goldman Company this company is to guarantee the payment of the said bonds of the said Memphis, Paris & Gulf Railroad Company, and also the payment of all interest thereon as it matures, and also the compliance by said Memphis, Paris & Gulf Railroad Company with all the terms of the deed of trust or mortgage securing the payment of said bonds."

We are of the opinion if there was any doubt about what the contract meant the Lumber Company made it plain by its interpretation of the same in the resolutions which it passed. We think the language used constituted a guarantee of payment. 20 Cyc. 1450; 1 Brandt on Suretyship and Guaranty, § 97; Barnes v. Bradley, 56 Ark. 105, 19 S. W. 319; Walker v. Files, 94 Ark. 456, 127 S. W. 739; 32 Cyc. p. 143.

[2] It is next contended that the contract of guaranty by the Lumber Company was ultra vires. As the articles of incorporation of the Lumber Company originally stood, there would probably be merit in this contention; but on January 3, 1908, for the very purpose of meeting this difficulty the stockholders of the corporation by unanimous resolution amended the articles of incorporation so as to provide:

"That its corporate power shall include the erecting and operating a sawmill, planing mill, spoke, lath, handle and a furniture factory, using all kinds of wood-working machinery; to manufacture and deal in all kinds of timber, lumber and the products thereof, finished and unfinished; to own and dispose of real property, improved and unimproved, including city property; to make improvements on real estate, erect houses, rent, lease and sell the same; to carry on a general mercantile business; to build and operate trams in connection with said sawmill business; and to do and perform everything necessary, incident and requisite to carrying out in full the several objects aforesaid; to buy, own and sell the stocks of railroads and other corporations; to guarantee payment of the same, and of the compliance by the company or companies issuing the same with the terms of the mortgages under which they are issued; and to mortgage its own property for the purpose of securing the payment of any bonds or other corporations which it may guarantee; and to insure compliance with the terms and conditions of the contracts and mortgages under which said guaranteed bonds may be issued."

This resolution was published in the Nashville News for a period of one week, the first insertion being January 21, 1908. It was also recorded in Howard county, Ark., January 31, 1908. Just when the amendment became effective under the laws of Arkansas is not clear; but, if it was not in force when the trust deed was given, we are of the opinion that under the facts in this case it is not open to the

Lumber Company to set up the defense of ultra vires. Equity look-ing through the forms by which the Lumber Company and the Rail-road Company framed their transactions will observe the substance of things, and in so doing it appears in this case that the guaranty of the Lumber Company was simply an agreement on the part of the same parties who issued the railroad bonds to pay their own indebted-ness. Further than this, it appears that the Lumber Company received $236,000 of the money paid by the Cotton Company for the railroad bonds for no other consideration than its promise to pay the railroad bonds. Under this state of facts, the Lumber Company was more of a debtor than the Railroad Company. The rule that one who has re-ceived the benefit of a contract which is simply ultra vires and not contrary to good morals may not plead the defense of ultra vires is fully sustained by the decisions of the Supreme Court of Arkansas, of which state the Lumber Company was a corporation. Dunbar v. Cazort & McGhee Co., 96 Ark. 310, 131 S. W. 698; Richeson v. National Bank of Mena, 96 Ark. 602, 132 S. W. 913; Minneapolis Fire Ins. v. Norman, 74 Ark. 190, 85 S. W. 229, 109 Am. St. Rep. 74, 4 Ann. Cas. 1045; Arkadelphia Lumber Co. v. Posey, 74 Ark. 377, 84 S. W. 1127; Bloom v. Home Ins. Co., 91 Ark. 368, 121 S. W. 293. The law in this respect as announced by the Supreme Court of Arkan-sas is to be followed by us. Eastern Building & Loan Assn. v. Ebaugh, 185 U. S. 114, 22 Sup. Ct. 566, 46 L. Ed. 830; Mudge v. Black, 224 Fed. 923, 140 C. C. A. 397. The argument of counsel for appellant that the bonds which were to be issued by the Lumber Company would have been invalid under article 12, § 8, of the Constitution of Arkansas, is irrelevant in this case. As we have said before, no person is before the court seeking the enforcement of any bond issued by the Lumber Company, and it is stated in the brief of counsel for appellee that no such bonds were issued. No liability is sought to be enforced against the Lumber Company except the mortgage which it gave to secure the payment of the principal and interest of the railroad bonds. We therefore decide that the contract of guaranty was one of pay-ment and not of collection, and that if the contract was ultra vires the corporation is not entitled to set up such defense on the facts as they appear in the record.

The decree below is affirmed.