**HAMBURG BANK et al. v. OUACHITA NAT. BANK IN MONROE.** *

No. 10175.

Circuit Court of Appeals, Eighth Circuit.

June 12, 1935.

J. A. Tellier, of Little Rock, Ark., for appellants.

Murray Hudson, of Monroe, La. (Thomas Compere, George Norman, and Compere & Compere, all of Hamburg, Ark.,

*Rehearing denied Sept. 16, 1935.

and Hudson, Potts & Bernstein, of Monroe, La., on the brief), for appellee.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

This is an appeal by the Hamburg Bank, a banking corporation organized and operating in the state of Arkansas, and pursuant to the laws thereof, and one Lizzie Blanks, from a decree in equity which adjudged the lien of the bank on certain lands to be inferior to the lien of appellee, a national bank, located, as its name indicates, at Monroe, La. For brevity, we shall refer to the banks as the Hamburg Bank and the Ouachita Bank.

The facts are long and somewhat complicated. But enough of these facts to make clear the questions of law which are up for judgment, run thus: In March, 1925, one W. L. Blanks died intestate, leaving surviving him three adult sons, and a widow, Lola G. Blanks, who on April 10, 1925, was duly appointed by the probate court of Ashley county, Ark., administratrix of his estate. Decedent had in his lifetime numerous business interests. He seems to have been a physician and an undertaker. He operated a garage and a mercantile business. He owned, and rented to tenants or operated on shares, some 3,400 acres of farm lands. He owned live stock and shares of corporate stock, among others and important here as an incident in this action, 310 shares of the stock of the Hamburg Bank. His brother, president then and now of the Hamburg Bank, and his sister-in-law, appellant Lizzie Blanks, wife of the president, together owned 790 shares; while his three sons owned 490 shares, or a total of 1,590 shares out of 2,000, the then capital stock of the bank.

Defendant's estate was indebted to numerous persons in about the aggregate sum of $53,000. Of this sum $37,646.67 was owed to appellant Hamburg Bank, whose claim was allowed, or the last of whose claims was allowed, about October 21, 1925, by the administratrix. Shortly after the appointment of Lola G. Blanks as administratrix, she was by an order of the probate court permitted to take charge of all of the numerous properties of the estate and run, carry on, and operate them for the purpose of paying the debts thereof. By April, 1927, she had paid all of the allowed claims, except the claim of the Hamburg Bank,

and on this claim she had paid current interest.

Early, in the year 1927, Lola G. Blanks (in her personal capacity) and her three sons, who together constituted all of the heirs of decedent, organized a corporation under the laws of the state of Arkansas, called the Blanks Company, and on March 29, 1927, Lola G. Blanks, Aubry G. Blanks, Frederick P. Blanks, and Lane W. Blanks, being all of the heirs of decedent having interests in such lands, conveyed all lands of the estate to the Blanks Company. The consideration for this conveyance was all of the capital stock of the Blanks Company, which was divided among the heirs, in the proportion of one-third to the widow and two-thirds to the sons. Later, Lane W. Blanks turned his stock back to the company, and so he disappears from this case.

Some time in January, 1928, the Blanks Company procured a loan of $50,000, from the predecessor of appellant, the Ouachita National Bank of Monroe. This loan was negotiated by J. P. Blanks, then and yet president of the Hamburg Bank, and at the time the salaried manager of the Blanks Company, and Frederick P. Blanks. This note was not secured, but made solely on the then financial standing of the Blanks Company, which agreed, as did also the Hamburg Bank, through its president, to maintain deposits in appellee, Ouachita Bank. This loan was to be used, and was largely used, by the Blanks Company, to finance itself in making a crop in the year 1928. Some $30,000 were paid on this note in the fall of 1928, leaving a balance due of $20,000, which forms the major part of the money on which this action primarily rests.

In January, 1930, the Blanks Company, by warranty deed, sold and conveyed to Lola G. Blanks, personally and not as administratrix, the 640 acres of land and certain town lots, here in controversy. These lands formed a part of the 3,400 acres of land of which decedent was seized in his lifetime. The grantee paid no cash for the lands so conveyed to her, but gave therefor her six notes, amounting in all to the sum of $51,000, and payable to the Blanks Company. In these notes a vendor's lien was duly retained for the purchase price of the lands so sold.

Shortly thereafter and early in the year 1930, appellee's predecessor, the Ouachita National Bank of Monroe, began pressing the Blanks Company for payment of the

$20,000 balance due on the note made by the Blanks Company to it. The Blanks Company, through A. G. Blanks, then a director of the Hamburg Bank, as also a stockholder and an officer of the Blanks Company, and J. P. Blanks then president of the Hamburg Bank, as also the manager of the Blanks Company, proposed to the Ouachita National Bank of Monroe that if it would advance an additional $5,000 in new money, the Blanks Company would evidence the latter sum as well as the balance of $20,000 (then $23,000, interest included) by new notes and secure these new notes by the six notes of Lola G. Blanks, which retained a vendor's lien on the lands in controversy here. Though assured by the president of the Hamburg Bank (though then, as contended by appellants, acting as manager for the Blanks Company,) that all claims against the estate of decedent had been paid except the claim of the Hamburg Bank, and that the latter was proscribed by the statute of limitations, it was deemed a matter of precaution by the attorney for the Ouachita Bank to have a resolution passed by the board of directors of the Hamburg Bank subordinating its lien, as the holder of allowed claims against decedent's estate, to that of the Ouachita Bank. On March 17, 1930, a special meeting of the board of directors of the Hamburg Bank was held, at which all of the directors were present. These directors were three in number, namely one W. E. Foote, and said J. P. Blanks, and A. G. Blanks. At this meeting a resolution of the board of directors of the Hamburg Bank was unanimously adopted, approving and ratifying all of the terms and conditions of a letter which had been written by J. P. Blanks, president of the Hamburg Bank, to the Ouachita Bank on March 14, 1930. This letter, so far as concerns the allowed claim of the Hamburg Bank, and the resolution of approval and ratification, read as follows:

"Ouachita National Bank,
    "Monroe, Louisiana.
"Gentlemen:
    "In reference to a conversation that I had with Mr. Millsap over the telephone about a deed of Blanks Company to L. G. Blanks for land described in the deed, regarding an administration lien held against the lands described in the above deed in Book 1 Page 12, abstracts of claim in the County of Ashley, State of Arkansas, which your bank is making a loan on.

"We agree, and this letter is your authority, to our claim coming second to your claim against this land, if you will loan Blanks Company the $25,000.00 as agreed upon. Our claim will come second to your $25,000.00 loan, plus the interest. * * *

"The above named is all the claims filed in Book 1 Page 12, abstract of claims against the Estate of the late W. L. Blanks, and this letter is for the purpose as above stated to clear the records so your claim will be first and our claim will be second to the $25,000.00, plus the interest.

    "Yours truly,
        "Hamburg Bank,
            "J. P. Blanks, President.
            "R. W. Baird, Cashier."

"After the above letter was read to the board, a resolution was offered and duly seconded and unanimously carried, approving and ratifying the letter in every way. It was further stated in the resolution that if there was any question as to the authority of the letter being written, that, we now authorize and instruct the said R. W. Baird, our Secretary, and J. P. Blanks, our President, to write the same letter under date of today and forward same to the Ouachita National Bank of Monroe, Louisiana for the purpose stated in the letter.

"There being no further business before the board, the meeting adjourned, subject to the call of the secretary.

            "R. W. Baird, Sec'y.
            "J. P. Blanks, Pres.

        "Certificate.

"I, R. W. Baird, certify that the above is a true and exact copy of the minutes of the Hamburg Bank of Hamburg, Arkansas, of the meeting held the 17th day of March, 1930.

            "R. W. Baird, Sec'y."

Thereafter, and on March 25, 1930, the Ouachita National Bank of Monroe loaned the Blanks Company $5,000 of new money, and the Blanks Company made and executed to the above bank its two notes for $8,000 and $20,000, respectively, and took as collateral security therefor the $51,000 in vendor's lien notes made by Lola G. Blanks to the Blanks Company, as the sales price for the lands in controversy. These two notes were renewed seemingly from time to time, till August 10, 1931, when the notes involved in this action were given. In addition to the collateral mentioned, these two notes were indorsed by F. P. Blanks, A. G. Blanks, and L. G. Blanks.

At the demand of the Hamburg Bank, and on January 29, 1932, the probate court of Ashley county, Ark., entered an order for the sale of all of the lands of decedent's estate, except the lands here in controversy. And as to the latter lands, the order provided that if on such sale the lands so ordered sold did not bring enough to pay the debt of the Hamburg Bank, which it found to be $36,449.57, another application might be made for the sale of the lands in controversy.

Prior to this, and on October 22, 1931, the Blanks Company, on an involuntary petition, was adjudicated a bankrupt, though the fact is scarcely relevant to any issue involved in the instant controversy, however much extrinsically litigation arising out of the fact may cast light on the case at bar. Cf. Bank of Hamburg v. Tri-State, etc., Association (C. C. A.) 69 F. (2d) 436.

In this situation, and on June 1, 1932, the predecessor of the appellee (for whom as an assignee pending the action appellee Ouachita National Bank in Monroe was substituted) began the action at bar against appellants, the administratrix, Lola G. Blanks, and eight others, who were either alleged to be liable personally for the notes due the Ouachita Bank from the Blanks Company, or appeared to have or claim an interest in the lands in controversy. Hereby, it is sought to obtain a personal judgment against the makers and indorsers of the two notes, aggregating $28,000 and interest, and on the six vendor's lien notes made by Lola G. Blanks; that the aggregate sum of the latter, plus interest, be adjudged and decreed to be a superior and senior lien to any alleged lien or claim of the Hamburg Bank or Lizzie Blanks; that appellee's lien on the lands in dispute be foreclosed, and the lands sold to satisfy the debt of the Blanks Company, evidenced by the two notes of August 10, 1931.

Nine of the defendants either filed disclaimers, or, failing to answer, suffered decrees pro confesso to be taken against them. The two defendants who answered and contested were the Hamburg Bank and Lizzie Blanks, now herein appellants. They contended, and now here contend, that (a) the United States District has no jurisdiction of the case, but that the whole matter is one for the probate court of Ashley county, Ark.; (b) that the resolution of the board of directors of the Hamburg Bank of March 17, 1930, purporting to make its lien second to that of the Ouachita Bank is void for that it was ultra vires of the Hamburg Bank; and (c) that neither the facts nor the acts of its officers are such as to estop the bank from setting up the defense of ultra vires. Specifically, and in addition to adopting in effect, so far as applicable, the defenses urged by the Hamburg Bank, Lizzie Blanks alleged (though she did not prove, but abandoned) that she was an assignee of some indefinite part of the claim of the Hamburg Bank. She proved, but she did not allege, that she was a stockholder of the bank.

The court nisi held it had jurisdiction, and so this question is assigned as error and met on the threshold of the case. It also held, that the Hamburg Bank had subordinated its judgment lien to the lien of the Ouachita Bank, and that it was estopped from denying its lack of authority so to do. And as a necessary corollary, it adjudged the lien of the Ouachita Bank, perforce the vendor's lien notes held by it as collateral, to be superior to the lien of the Hamburg Bank, and decreed foreclosure and sale of the 640 acres of land and the town lots in dispute.

The appellants specify many errors, but they rely on few, and these few are reducible, as forecast already, to but three. These are, to repeat: First, did the trial court have jurisdiction; second, was the subordination by appellant Hamburg Bank of its lien to the lien of the Ouachita Bank an act ultra vires of its powers, under the laws of the state which created it; and, third, if it was an ultra vires act, is it estopped by the facts in the case from setting it up?

We are of opinion that the contention of lack of jurisdiction as made by appellants must be disallowed. Clearly, the amount in controversy and diversity of citizenship warranted jurisdiction, unless the probate court of Ashley county, Ark., possessed constitutional authority to take judicial cognizance of the particular matters herein up for judgment between appellants and appellee. We think the cases of Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536, and Bank of Hamburg v. Tri-State, etc., Ass'n (C. C. A.) 69 F.(2d) 436, have no application to the legal situation present in the instant case, though these two cases are much relied on by appellants, as sustaining their contention. There can, of course, be no valid dispute touching the legal facts, that probate courts in Arkansas

are constitutional courts, and that they are vested with exclusive jurisdiction to control the administration of the estates of dead men. Evans v. Gorman (C. C.) 115 F. 399; Article 7, § 34, Const. Ark. 1874. But the controversy here is outside of a matter of administration, and falls within the field of equity jurisdiction in which the probate court has no power to act. Brown v. Sledd, 158 Ark. 47, 249 S. W. 556; Smith v. Walker, 187 Ark. 161, 58 S.W. (2d) 946. In Arkansas, as in other states of the Union (certainly as a general rule), the real estate of a deceased person on his death vests in his heirs, subject to the payment of the debts of such deceased. Here the Ouachita Bank claims a lien on a part of that real estate, through mesne conveyances from the widow and the heirs of the decedent, while the Hamburg Bank claims a lien perforce the allowance of its claim by the probate court; in effect, perforce a judgment of the probate court. The question is: Did the Hamburg Bank, by what it did, waive its judgment lien, and, in contemplation of law, transfer it to the Ouachita Bank? This involves, it seems to us, a controversy beyond the jurisdiction of the probate court, inasmuch as that court possesses no common-law jurisdiction. Smith v. Walker, supra. Certainly some court had jurisdiction to determine this controversy. Since the probate court did not have it, and since the federal District Court, present sufficient amount in dispute and diversity of citizenship, as here, did have it, we are constrained to the view that the matters herein up for judgment were properly cognizable in a federal court. Whether the relief sought upon this view was or was not too inclusive, we are not, in the view we are compelled to take of other questions in the case, called on to decide.

■ The next question arising and reserved for consideration is whether the resolution of the Hamburg Bank, by which it attempted to make its lien "come second" to that of the Ouachita Bank was or was not ultra vires of its power under the laws of Arkansas, pursuant to which it was created a banking corporation. This question is relegable to the local law. Hummel v. Steel Casting Co. (C. C. A.) 5 F.(2d) 451; Graysonia-Nashville Lumber Co. v. Goldman (C. C. A.) 247 F. 423.

■ The thing here done by the Hamburg Bank, where, by the resolution of March 17, 1930, quoted hereinabove, it un-

dertook to subordinate its judgment lien to the assigned vendor's lien held by the Ouachita Bank, was tantamount to a gift to the Ouachita Bank. For in effect it assigned to the latter, its paramount lien on the lands without any consideration moving to it from the Ouachita Bank. It seems so plain that this was a mere matter of accommodation, and so ultra vires of its power, that neither exposition nor citation of authority is required to prove the fact. The statute of Arkansas which sets out the powers of a banking institution organized under the law of that state furnishes no warrant for what was here done. Section 684, C. & M. Dig. 1921. True, what was done was not expressly forbidden, but it was not enumerated among the powers conferred; hence, it was ultra vires of those powers.

Both appellants and appellee accept the definition of the term ultra vires, as found in 3 Fletcher Cyc. Corp. § 1512, which reads thus: "When properly used, the words 'ultra vires,' as applied to the act of a corporation, mean simply an act which is beyond the powers conferred upon the corporation by its charter, as distinguished from an act which is authorized by its charter. The act need not necessarily be expressly prohibited by the charter or by any other statute. Nor need it be in any sense immoral or injurious to others. It may be an act which could be lawfully done by a natural person. It may be even praiseworthy, as in the case of a gift by a corporation for charitable or religious purposes. Yet, if it is not authorized by the charter of the corporation, or is not implied or incidental power, it is ultra vires."

More definitely and specifically the limitations of the powers of a banking corporation are collated in the excellent work of Morse on Banks and Banking vol. 1, § 127, thus: "Directors can use the funds and property of the bank only for proper banking purposes, and for the strict furtherance of the business objects and financial prosperity of the corporation. Their discretion and power to manage its affairs extend only to the conducting those affairs in the best manner that their knowledge, foresight, and observation can suggest, to the end of increasing the profits and enhancing the value of the investments which have been intrusted to their charge by others. They cannot use any portion of the money for such objects of usefulness or charity, or the like, as they may consider worthy of

encouragement and aid. All their transactions must be strict matters of business. They cannot make gifts from the corporate property. They cannot, without authority from the stockholders, subscribe money to any objects, however meritorious, unless with the immediate view and expectation of thereby furthering the actual worldly and material well-being of the bank. They are trustees of the property of others for this sole and only purpose, and if they appropriate any portion of the property for any other purpose whatsoever, however intrinsically deserving, it is yet a deviation from their obvious duty, both legal and moral, for it is nothing else than a clear breach of a plain and simple trust."

Not only does the general law accord with the above quotations, but the decisions of the Supreme Court of Arkansas, construing the statute of that state, are also in complete accord with the language above quoted from Fletcher and Morse. Central Transportation Co. v. Pullman's, etc., Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; Park Hotel Co. v. Fourth Nat. Bank (C. C. A.) 86 F. 742; Merchants' Bank v. Baird (C. C. A.) 160 F. 642, 17 L. R. A. (N. S.) 526; Salt Lake City v. Hollister, 118 U. S. 256, 6 S. Ct. 1055, 30 L. Ed. 176; McCormick v. Market Bank, 165 U. S. 538, 17 S. Ct. 433, 41 L. Ed. 817; California Nat. Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198; In re Steele Furn. Co. (C. C. A.) 18 F.(2d) 490; Simmons Nat. Bank v. Dilley Foundry Co., 95 Ark. 368, 130 S. W. 162; El Dorado Improvement Co. v. Bank, 85 Ark. 185, 107 S. W. 676; Hutson v. T. M. Dover Merc. Co., 170 Ark. 984, 282 S. W. 371; Richeson v. National Bank, 96 Ark. 594, 132 S. W. 913; Citizens' Bank v. Clements, 172 Ark. 1023, 291 S. W. 439; Wilson v. Davis, 138 Ark. 111, 211 S. W. 152. So, to us it seems too plain for contention to the contrary, that neither under the general law nor under the local law can authority be found for what was done by the Hamburg Bank, and hence its act was ultra vires of its charter, into which must be read the statute of Arkansas, which hedged its powers about.

The only remaining question in the case is whether the Hamburg Bank, under any fact or act done by it as disclosed by the record, is estopped from setting up the plea of ultra vires. There is in this record hardly a disputed fact. The reasons which dominated the Hamburg Bank in doing what it did are easy to discern, and have been forecast already in the statement of the case. The Blanks family owned more than three-fourths of the capital stock of the Hamburg Bank; its president was closely akin to this family and was a salaried employee of the Blanks Company; the latter company largely carried its account with this bank; two of the three members of its directorate were members of this family, and one of them was the owner of one-third of the stock of the Blanks Company. Not only is it clearly to be inferred that the Ouachita Bank was acquainted with these factual things, but the law is that it must be charged with notice of the statutory delimitations of the powers of the Hamburg Bank. So it knew that the Hamburg Bank could not give away its assets, and it also knew that this bank was a corporate entity separate and apart from its stockholders.

Whatever may formerly have been the more stringent rule, we think it is now the settled law that although a corporate act done by a corporation in contravention of its charter, or in the teeth of the law, is void, yet an act which is merely beyond the power of a corporation, for that it is not among its enumerated powers, while ultra vires, may sometimes be upheld on the ground of estoppel. In re Steele Furniture Co. (C. C. A.) 18 F.(2d) 490; Gibson v. Kansas City Refining Co. (C. C. A.) 32 F.(2d) 658; Hummel v. Steel Casting Co. (C. C. A.) 5 F.(2d) 451, 454.

As was said in the Hummel Case, supra, "All ultra vires contracts are not void. The distinction between a contract merely in excess of the power of a private business corporation not forbidden by its charter or the law, and a contract so forbidden, has been pointed out a number of times by this court as well as by the courts of other jurisdictions." This distinction, as regards a contract which falls into the category first above mentioned, is that where the contract has been performed, a corporation will not be heard to raise the defense of ultra vires when it has received and retains the benefits of the contract. This rule has been enunciated by the Supreme Court of the United States, as well as by the Supreme Court of Arkansas, in many cases. Central Transportation Co. v. Pullman's, etc., Co., supra; Park Hotel Co. v. Bank, supra; Graysonia-Nashville Lumber Co. v. Goldman (C. C. A.) 247 F. 423, 428; Gibson v. Kansas City Refining Co., supra;

Bloom v. Home Ins. Agency, 91 Ark. 367, 121 S. W. 293; Jones Co. v. Davis, 181 Ark. 265, 25 S.W.(2d) 434; Richeson v. Bank of Mena, supra; Lena Lumber Co. v. Brickhouse, 173 Ark. 348, 292 S. W. 1007.

In the case of Graysonia-Nashville Lumber Co. v. Goldman, supra, this court said: "The rule that one who has received the benefit of a contract which is simply ultra vires and not contrary to good morals may not plead the defense of ultra vires is fully sustained by the decisions of the Supreme Court of Arkansas, of which state the Lumber Company was a corporation."

So, here the decisive question upon the point is one of fact. That fact is: What benefit did the Hamburg Bank get, and now retains, as a consideration for its subordination of its lien to the lien of the Ouachita Bank? We have labored vainly in the hope of finding one, for the case is not lacking in human interest. Here the resolution which undertook to waive the lien of the Hamburg Bank specifically recites: "We agree, and this letter is your authority, to our claim coming second to your claim against this land, if you will loan Blanks Company the $25,000 as agreed upon. Our claim will come second to your $25,000. plus interest." Elsewhere the record shows that not one cent of this money, new or old, found its way into the cashbox of the Hamburg Bank. The suggestion was made in argument that a wholly indefinite part of the $5,000 of new money was used to pay taxes on the lands in dispute and on other lands on which the Hamburg Bank claimed a lien. But the record refutes the suggestion. For it shows that this money had been checked out to pay bills and buy supplies before taxes were due, and that no part of it was used in the payment of taxes.

This new money, while at first left on deposit in the Ouachita Bank, was checked out—except $1,000, which shortly also followed—in four or five days; that it was deposited in the Hamburg Bank, and that it had all been checked out of the Hamburg Bank by the Blanks Company in a few weeks after the loan was made. This is the only proven benefit, if any, accruing to the Hamburg Bank in all its transactions with the Ouachita Bank in and about this entire controversy.

So conceding the law to be that a bank may not set up the defense of ultra vires against an executed contract, if it has received and retains benefits flowing from such contract, the question left is: Was the deposit in the Hamburg Bank of an indefinite part of $5,000 for a short but indefinite number of days such a benefit as to estop the Hamburg Bank from the use of the plea in its defense here? We do not think so. We have found no case, nor has the diligence of counsel served to furnish a case, wherein it has been so ruled. Such a benefit is wholly intangible, at least, for that it cannot be returned and so must be retained. Some such benefit was before this court in the case of Merchants' Bank v. Baird, supra, and was there deemed insufficient, though there, as it is not here, the alleged benefit was capable of being returned.

Obviously, this case rides off on its own narrow facts. It deals alone with a resolution which on its face discloses, as also do the extrinsic facts, a bald gift, or voluntary accommodation, without any consideration whatever, and not with a release of security, or a part thereof in the apparent due course of the business of the Hamburg Bank, for a consideration moving to it from the Ouachita Bank or from any other person or entity. Concededly, the case, at least as to the $5,000 of new money, is a harsh one; but the settled law cannot be unsettled in order to rescue one who has been improvident from his own inadvertencies.

In the view we are constrained to take of the case, we see no reason to discuss the situation of appellant Lizzie Blanks. As to her alleged and not proven status, as an assignee of a part of the probate court judgment of the Hamburg Bank, its case is her case. As to her proven, but not pleaded, status as a stockholder in the Hamburg Bank, we are not called on to pass, or even to consider, save as an incident merely to the plea of ultra vires.

It follows that the case must be reversed and remanded, with instructions that the bill of the appellee be dismissed, with costs. And so it is ordered.

SANBORN, Circuit Judge (concurring).

While I concur in the able opinion of Judge FARIS, whose reactions toward this case are, I am sure, the same as mine, I cannot refrain from saying that, in my judgment, the Hamburg Bank, due to the inexcusable conduct of its president and those of its directors who participated in giving to the Ouachita Bank the subordi-

nation agreement, upon which the latter relied in making the loan to the Blanks Company, and which is now being repudiated, is in as contemptible a position as was ever occupied by a successful litigant. The application of correct rules of law to the facts of this case leads to an unfortunate result, which there is apparently no way to avoid. The Ouachita Bank, in making the loan to the Blanks Company, did everything which a reasonably prudent person not learned in the law would ordinarily have done. It employed counsel, and, upon his advice, accepted from the Hamburg Bank the subordination agreement. That it should be deprived of the security which it supposed it had, and which the officers of the Hamburg Bank led it to believe that it had, is deplorable. However, the loss results not from any fault of the Hamburg Bank as an entity distinct from its officers and majority stockholders, but rather from the unwarranted acts of those who were unfortunately, in charge of its affairs.