GRAYSONIA–NASHVILLE LUMBER CO. v. GOLDMAN.

(Circuit Court of Appeals, Eighth Circuit. September 1, 1919.)

No. 5298.

1. MORTGAGES ⬦196—PROCEEDS OF TIMBER CUT PENDING FORECLOSURE APPLIED ON DEBT.

An order, in a suit to foreclose a mortgage on timber land, applying on the mortgage debt stumpage accruing from the cutting of timber pending the suit, by a purchaser from a grantee of the mortgagor, impounded by the court in lieu of the appointment of a receiver, *held* proper, where the property was insufficient to pay the debt and the mortgagor insolvent.

2. APPEAL AND ERROR ⬦1234(7)—LIABILITY ON SUPERSEDEAS BOND POSTPONING FORECLOSURE SALE.

Where a supersedeas bond given on appeal by a defendant in a foreclosure suit operated to postpone a sale of the mortgaged property, which had been advertised, the court properly allowed as damages on the supersedeas bond, after affirmance, interest on the amount of the proceeds of the property when sold during the time of delay and the cost of advertising.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit in equity by Alvin D. Goldman, trustee, against the Nashville Lumber Company and others. From orders of the District Court, the Graysonia-Nashville Lumber Company appeals. Affirmed.

George T. Priest, of St. Louis, Mo. (Boyle & Priest, of St. Louis, Mo., on the brief), for appellant.

George B. Rose, of Little Rock, Ark. (W. E. Hemingway, D. H. Cantrell, and J. F. Loughborough, all of Little Rock, Ark., on the brief), for appellee.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. On March 12, 1917, a decree of foreclosure was rendered of the mortgage of January 1, 1908, made by the Nashville Lumber Company, the owner of about 40,000 acres of timber land in the state of Arkansas, to Alvin D. Goldman, as trustee for the bondholders, and for the sale thereof to pay the sum of $471,-945.30, adjudged to be a lien thereon, due to the holders of the bonds of the Memphis, Paris & Gulf Railroad Company under that mortgage. In this suit and decree Alvin D. Goldman, the trustee, was the plaintiff. The mortgagor, the Nashville Company, the Graysonia Lumber Company, a corporation, to which the Nashville Company on May 10, 1911, conveyed the mortgaged land subject to the mortgage, James

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. Allen, with whom on February 15, 1915, the Graysonia Company had made a contract to sell the timber on the mortgaged land for a stumpage of $3 per 1,000 feet, and the Allen Lumber & Box Company, a corporation, to which Allen had assigned the contract, were defendants. Pursuant to the decree, the master had advertised the property described in the decree for sale, to be made on July 10, 1917, when the Graysonia Company appealed from the decree to this court, and on July 2, 1917, stayed proceedings under the decree by means of a supersedeas bond in the sum of $15,000, signed by the Graysonia Company and the Ætna Casualty & Surety Company. Upon consideration of the questions presented by the appeal, this court affirmed the decree below. 247 Fed. 423, 159 C. C. A. 477. Thereupon the master again advertised the sale, and on April 29, 1918, he sold the property to Lewelling & Price-Williams Company for $250,000, and that sale was subsequently confirmed.

On April 24, 1918, the plaintiff filed a motion in the District Court for a judgment on the supersedeas bond. On May 13, 1918, the Graysonia Company filed a petition in that court for an order that the funds paid into the registry of the court by the Allen Company during the pendency of the suit, pursuant to an order of the court made on October 24, 1916, be paid over to it. On July 15, 1918, after due notice and hearing, the court below decreed that the petition of the Graysonia Company for the funds in the registry of the court be denied, and that those funds be applied first to the payment of costs and allowances in the foreclosure suit, and that the remainder be paid to the plaintiff or his solicitor and credited upon the plaintiff's decree. It also ordered that the Graysonia Company be forever restrained from taking up or removing any steel or iron rails from any of the tram roads on any of the lands described in the complaint. It found that the plaintiff sustained damages by reason of the supersedeas to the extent of the expenses of the master in advertising the sale a second time, $500.50; to the extent of the taxes on the property paid in 1918 for the year 1917, $4,020.21; and to the extent of the interest that would have been received by it during the stay at 6 per cent. per annum on the $250,000 for which the lands were sold, but which was not earned or received by the plaintiff on account of the postponement of the sale from July 10, 1917, to April 29, 1918, in the sum of $12,040, amounting all together to $16,560.71. It therefore adjudged that the complainant recover of the Graysonia Company and the Ætna Casualty & Surety Company $15,000, the amount of the penalty of their bond and interest thereon from the date of that decree. These decrees of July 15, 1918, are now challenged by this appeal of the Graysonia Company.

The first and the most important question presented is the just and equitable disposition of the funds paid into the registry of the court by the Allen Lumber & Box Company during the pendency of the foreclosure suit. Those funds accumulated under and pursuant to an order of the court below, made on October 24, 1916, to the effect that the Allen Company, which had contracted with the Graysonia Company to purchase all the merchantable timber on the mortgaged lands

and to pay $3 per 1,000 feet stumpage therefor, and also to pay certain rentals in addition, and which was in possession of the mortgaged property, cutting and removing the timber therefrom under this contract, was restrained from paying the agreed price of the timber, as it should be cut, to the Graysonia Company, was directed to deposit it in the registry of the court, there to be held until the final decree herein, was made the custodian of the court, and commanded to hold all timber that should be cut from said lands and all lumber manufactured therefrom for the court, and was restrained from shipping any of it until it should have first paid into the registry of the court the agreed price of the sale of this timber, $3 per 1,000 feet. That order, also, until the further order of the court, restrained the Allen Company from paying to the defendants, or either of them, the rentals specified in its contract, and directed it to pay such rentals also into the registry of the court. Under this order the Allen Company paid into the registry of the court $36,968.13, and out of this fund the court paid the Lesser-Goldman Company for the taxes on the property $2,506.58, and it paid to the plaintiff as trustee, to reimburse him for the payment of the taxes for the year 1917, $4,020.21, leaving in the registry $30,441.34 on May 21, 1918, which the court directed to be applied, first, to the payment of the costs and allowances in the foreclosure suit, and then to the payment of the unpaid balance of the $471,495.30 remaining after the application thereto of the $250,000 realized from the sale.

The record fully convinces that the $36,968.13 paid into the registry consisted principally of the purchase price of the timber which the Allen Company cut and removed from the land between October 24, 1916, and May 21, 1918, and of some relatively small amounts of rentals which the Allen Company agreed to pay by its contract with the Graysonia Company. The record, however, has been searched in vain to discover what the amount of these rentals was. At the time when the order of October 24, 1916, was made, and at the time when the decree of July 15, 1918, here challenged, was made, these facts were established by the record. The complainant had a paramount lien to secure the payment of more than $450,000, superior to the title and claim of the Graysonia Company on the 40,000 acres of mortgaged land and the timber standing thereon. That security was inadequate to pay that debt. The Nashville Company, which made the mortgage to the plaintiff, and the Graysonia Company, which took the title to the land and timber subject to the mortgage, were insolvent. Default had been made in material terms and conditions of the mortgage, so that by its express provisions the plaintiff was authorized to protect and enforce his rights thereunder by a suit or suits in equity, and among these rights was the right expressly granted to him by the mortgage to take possession of the mortgaged property and operate it himself, and to have a receiver appointed to take possession of and operate it.

In this situation the plaintiff gave due notice in the foreclosure suit of an application to the court for a receiver of the mortgaged property, of the proceeds of the timber the Allen Company was removing, and of the rentals it was paying under its contract. That

application came on for hearing on October 24, 1916. Counsel for the plaintiff deemed the order of that date, making the Allen Company the court's custodian of the timber and requiring it to pay the agreed price of that timber which it should cut and the rentals into the registry, sufficient to impound those funds without the service and expenses of another receiver, and they consequently took that order and did not ask for another receiver. In this state of the case the order of October 24, 1916, and the decree of May 21, 1915, do not appear at first blush to have been inequitable. The merchantable timber standing on the mortgaged land was a part of the body of the mortgaged property, and as the mortgagor and its grantee were insolvent and the security for the payment of the money owing was inadequate, it is difficult to perceive why the plaintiff had not the clear equitable right to the immediate and constant preservation and final application of it and its proceeds to the payment of the debt it was mortgaged to secure.

Counsel for the Graysonia Company argue that this order and decree were erroneous, because the plaintiff had no right to the possession and no actual possession of the mortgaged property. They contend that rents and profits are incidents of the right of possession, that where there is no right to the possession, and also where there is no actual possession by the mortgagee, there is no right to the rents and profits of the mortgaged premises, and the plaintiff was therefore without any equitable right to this fund. They also claim that the rents and proceeds of the mortgaged property may not be impounded, except by means of the application for and the appointment of a receiver. The correctness of these contentions is not conceded. It is believed that neither actual possession of the mortgaged premises, nor the right to the possession thereof, nor the appointment of a receiver, is indispensable to the impounding of the rents of mortgaged property by an order of a court of equity upon the suitable petition or application of a mortgagee plaintiff in a foreclosure suit who has a paramount equitable lien thereon, and that, even if the appointment of a receiver had been necessary, the practical effect of the order of October 24, 1916, making the Allen Company the court's custodian of the timber, the lumber from it, the proceeds thereof, and the rentals, and commanding it to pay those proceeds and rentals into the registry of the court, was the appointment of that company a receiver thereof. But these questions are not, in the opinion of the court, controlling in this case, and therefore it is unnecessary to discuss them at length.

[1] The standing timber on this mortgaged land and the proceeds of its sale were not rents and profits; they were a part of the corpus, a part of the mortgaged res. The decree of foreclosure, which was affirmed by this court, expressly adjudged that the plaintiff had a lien thereon paramount to any claim or title of the Graysonia Company. The appropriation to itself of that security or any part of it by the insolvent Graysonia Company, when the mortgagor was insolvent and the entire security was inadequate, was inequitable, and the attempt so to do imposed upon the court below the moral and the legal duty on

the proper application of the plaintiff to prevent it, and to apply the proceeds of this timber to the payment of the debt it secured. Nor has any decision or rule or principle in conflict with this conclusion been discovered in the opinions in the cases cited by counsel in their brief or argument.

While the record indicates that some small part, not over 15 per cent. of the $36,968.13, and probably not as much as the amount of the costs and allowances in the foreclosure suit, may have been derived from the rentals, it does not disclose more accurately what the amount of the rentals paid into the fund was, and upon this question the testimony is too confused and uncertain to base any finding or decree upon. If there was any error in the court below in the disposition of that part of this fund which was derived from the rentals, the burden was upon the Graysonia Company to prove the error and the extent of the injury resulting therefrom, so that this court, which on an appeal tries the case de novo, could correct the error, settle the final decree, and thus end the litigation. It has not borne this burden. It has not presented evidence sufficient to enable this court to separate the comparatively small amount of the rentals from the proceeds of the timber, which composed the great bulk of the fund. Moreover, neither in the assignment of errors, nor in the argument, nor in the brief of counsel, has the claim been made that the disposition of this fund was erroneous in part, though correct in part; that it was erroneous as to the rentals, though just as to the proceeds of the timber. On the other hand, the ground on which the decree has been assailed has been and is that the equitable right and title to the entire fund was in the Graysonia Company. In view of these considerations, the right of the Graysonia Company to the rentals, if any, has not been so presented to this court, either by evidence or by assignment of error and argument, that this court can consider or determine it.

Another contention of counsel for the Graysonia Company is that, because the order of October 24, 1916, provided that the moneys owing for the cutting and removal of the timber should be deposited in the registry, and should be there held until the final decree of the court, and because that decree was rendered on March 17, 1917, and it made no provision regarding this fund or the proceeds of the timber cut and removed thereafter, the decree of July 15, 1918, is erroneous, so far as it relates to this part of the fund. But this part of the fund was paid into the registry, as equity required that it should be, it was in the custody of the court when it rendered the decree, and the court's disposition of it was just and equitable. The result is that the Graysonia Company has failed to convince either by evidence or argument that the court below fell into any error of law or made any mistake of fact in its disposition of the fund in the registry of the court by its decree of July 15, 1918.

[2] The next question for consideration is the amount of damages which the plaintiff was entitled to recover on the supersedeas bond. When that bond was given the sale under the foreclosure decree had been advertised to take place on July 10, 1917. The supersedeas bond

caused the postponement of that sale until April 29, 1918, when the property was sold for $250,000, which was but little more than half of the amount due on the bonds which the property was mortgaged to secure. If the sale had been on July 10, 1917, the plaintiff could and probably would have obtained interest on this $250,000 at 6 per cent. per annum during this delay. The court accordingly allowed him interest during this time as a part of his damages for the delay. The bond is in the usual form, and is conditioned that the Graysonia Company shall answer all damages and costs, if it fails to make its appeal good. It was given and approved under rule No. 13 of this court, which specifies just damages for delay, costs, and interest on the appeal among the matters to be secured by such bonds. Why was not this interest among the damages the plaintiff suffered by the delay?

Counsel for the Graysonia Company answer because plaintiff received about $26,000 above costs and disbursements out of the rents and profits of the mortgaged property which accrued during this stay, and therefore he lost nothing, but gained much, thereby. But this $26,000 was a part of the fund deposited in the registry under the order of October 24, 1916. It was the proceeds of the sale of the merchantable timber cut and purchased by the Allen Company, and there is no evidence that any of this $26,000, or, if any of it, how much of it, was derived from the rentals. The record makes it probable that none of it was—that the rentals were less than the amounts paid out of the fund for allowances and disbursements. As, therefore, this $26,000 must be deemed to have been the proceeds of the timber cut and removed, the plaintiff gained nothing therefrom. This sale and removal of the timber presumptively diminished the value of the mortgaged property by the amount paid for the timber. Presumptively the mortgaged property would have sold for $26,000 more on July 10, 1917, before this $26,000 worth of timber was removed therefrom, than it did sell for on April 29, 1918, after its removal, and the result is that the plaintiff lost the interest on the $250,000 by the delay.

It is said that it was error to allow this interest, because interest is never allowed on any decree that is not for a sum of money or is silent as to interest, and that there was no judgment for money against the Graysonia Company, and no provision for interest in the decree of foreclosure. But this $12,040 is not interest on any judgment, or on the decree, or on the amount thereof. It is the legal damages the plaintiff sustained because the Graysonia Company delayed his receipt of the $250,000 derived from the sale from June 10, 1917, to April 29, 1918. Other arguments against this allowance are that interest is never allowed on an unliquidated amount, and that the Supreme Court in Kountze v. Hotel Co., 107 U. S. 391, 2 Sup. Ct. 911, 27 L. Ed. 609, held that interest on the debt adjudged due by the decree, which accrues pending the appeal, is not properly assignable as damages caused by the appeal bond, but that such damage as arises from the delay incident to the appeal is such damage. This $12,040, however, is not interest on any unliquidated amount. The amount was liquidated by the sale, and this $12,040 is the amount

which the court below found to be the damage resulting from the postponement of the plaintiff's receipt of the $250,000 produced by the sale from July 10, 1917, to April 29, 1918. In making this finding it undoubtedly measured this damage, as it lawfully might in the absence of other pertinent evidence, by the legal and prevalent rate of interest commonly paid for the use of money. Nor was this $12,040 the interest on the debt held inadmissible as the measure of the damages on the supersedeas bond in the Kountze Case. The debt was $471,495.30. It was not interest on that amount. On the other hand, it was one of the damages for delay incident to the appeal held to be allowable by the court in the Kountze Case, and there was no error in its allowance.

It is specified as error that the court below allowed as damages for delay $4,020.21, which was paid out of the fund in the registry on account of the taxes of 1917. This specification rests on the mistaken theory that the Graysonia Company had the equitable right and title to the fund in the registry as against the plaintiff, and the court rightly allowed the amount of these taxes, because upon the record that fund must be held to have been the proceeds of the sale of the timber in which the plaintiff had the superior equity and the delay caused by the supersedeas necessitated the payment of these taxes, which neither the plaintiff nor his fund would have been required to pay, if the bond had not been given.

The only other item challenged in the assessment of damages resulting from the supersedeas bond is the sum of $550.50 paid for readvertising the sale of the property. This expense was rendered necessary by the stay of proceedings caused by the bond, and was therefore properly allowed. There was no error in the assessment of damages resulting from the delay caused by the supersedeas bond, nor in the decree thereon.

Finally, it is contended that the decree of the court that the Graysonia Company be restrained from taking up or removing any of the steel or iron rails from any of the tramways on the mortgaged lands is too broad, in that it covers its right to about 6 miles of steel rails added by the Graysonia Company after its purchase of the property to the 11½ miles there were on the property at the time of that purchase; but a careful perusal of the evidence in the record on this subject has failed to convince that there was proof therein sufficient to sustain this claim of error or mistake in the order of the court.

Let the decrees of the court below, made on July 15, 1918, challenged by this appeal, be affirmed.