**In re PINE LAKE VILLAGE APARTMENT CO., Debtor.**

**Thomas J. HARTIGAN, as Trustee of The Twenty Seven Trust under that certain Trust Agreement dated as of May 1, 1980, Plaintiff-Appellee,**

**v.**

**PINE LAKE VILLAGE APARTMENT CO., Defendant-Appellant.**

**No. 82 Civ. 3008 (GLG).**

United States District Court, S. D. New York.

June 10, 1982.

---

Burns & Fox by John M. Burns, III, New York City, for defendant-appellant.

Zalkin, Rodin & Goodman by Andrew D. Gottfried, New York City, for plaintiff-appellee.

## MEMORANDUM DECISION

GOETTEL, District Judge.

The debtor moves, pursuant to Bankruptcy Rule 805, to modify an order of the Bankruptcy Court which allowed a stay pending appeal of that court's order annulling the automatic stay against lien enforcement providing that a supersedeas bond in the amount of $400,000 be filed. The debtor seeks to obtain a stay pending appeal without the posting of any bond.

The debtor is a limited partnership tax shelter whose sole asset is an apartment complex in Lindenwold, New Jersey, which is encumbered by a consolidated first mortgage securing present indebtedness of approximately $14 million. This indebtedness resulted from a series of building loans aggregating $10,400,000 made by Chase Manhattan Mortgage and Realty Trust between October 1971 and June 1974, which funds were used for the construction of the apartment complex. The realty trust restructured the unpaid obligations pursuant to a Consolidation and Modification Agreement dated May 12, 1975, which provided, among other things, that all rental income from the apartment complex would be applied solely to operating expenses and the payment of the then outstanding principal sum of $10,400,000 (plus accruing interest) out of net cash flow until March 1, 1982, when all unpaid principal and accrued interest would be due and payable.

Later (as part of a plan of arrangement under Chapter XI), the realty trust assigned to the trustee/plaintiff-appellee Hartigan all of its interest in the property. Thereafter, Hartigan sought a foreclosure of the property and other relief in the Superior Court of the State of New Jersey. The debtor then filed its petition in Chapter XI in the Bankruptcy Court for this district, which had the effect of staying all further proceedings in the state court. Hartigan then commenced proceedings seeking relief from the automatic stay against lien enforcement. The matter was tried on April 14, 1982 before Bankruptcy Judge Schwartzberg, who rendered a thirty-two page decision, 19 B.R. 819, that recited the facts giving rise to the proceedings in great detail and considered the legal issues at length. His decision granted Hartigan relief from the automatic stay. The debtor moved for reargument or, in the alternative, for a stay of the Bankruptcy Court order pending appeal.[1] The bankruptcy judge, in a seven-page decision, denied the motion for reargument, but granted the stay pending appeal on condition that the debtor file a $400,000 bond on or before May 10, 1982.

The bond was not filed. The stay expired on May 10, 1982. On the following day, by order to show cause, the debtor brought on the instant motion. As a result of the failure to post the bond, the trustee has been taking various steps towards foreclosing the property in the New Jersey courts. However, an actual foreclosure sale is far from imminent.[2]

Since the facts were set forth in such detail in the Bankruptcy Court opinion, they will not be repeated herein. Essentially, the situation is that the mortgage debt on the property, plus accrued interest, amounts to more than twice the value of

---

1. One of the grounds for the motion for reargument was the fact that the debtor had submitted two alternate plans, one of which had not been considered by the Bankruptcy Court.

2. In opposition to the New Jersey proceedings, the debtor submitted *ex parte* an order enjoining the trustee from proceeding in the New Jersey courts. The Court has not signed this order, which concerns matters either *sub judice* before the Bankruptcy Court or previously determined by it.

the property. The debtor desires to keep this losing enterprise going, apparently because of tax consequences to its tax shelter program. Both of the plans proposed by the debtor call for the equity security holders to contribute $700,000 of new capital and to guaranty the sufficiency of the cash flow for three years. One-half of the new funds would be paid to the mortgagee and the remainder of its interest would be paid out over a period of thirty years. The mortgagee's unsecured interest (in excess of $7 million) is accounted for differently under the proposals, but, realistically speaking, would be totally lost. Trade creditors would be paid in full. If one class of impaired creditors accepts the plan and another rejects it (as the mortgagee will with respect to his secured and unsecured interests), the plan cannot be confirmed unless all of the conditions of section 1129(a) are met and, more important, the plan is "fair and equitable" under the standard set forth in section 1129(b).[3]

As the bankruptcy judge noted, the debtor's proposal cannot have any validity unless there is a likelihood of reorganization. The trade creditors are actually an artificial class whose claims would have been paid in due course but for the Chapter XI filing. Even if the trade creditors are viewed as an approving impaired class, the plan, in the opinion of the bankruptcy judge, was so basically unfair as to have no chance of approval. The debtor's maximum possible income after expenses appears inadequate to pay the proposed amortization amount of the new mortgage. Moreover, the equity interests (general and limited partners of a partnership having no other asset but the apartment house) would retain their interests, while the mortgagee's secured claim would receive something less than its value prior to the plan and its unsecured claims would, practically speaking, be eliminated.

In the opinion of the Bankruptcy Court, the plan did not satisfy the fair and equitable test and the debtor's lack of equity in the estate and its unobtainable objective under Chapter XI constituted sufficient cause for granting the mortgagee's requested relief. Moreover, the debtor did not meet the requirements of 11 U.S.C. § 362(d)(2) because it does not have an equity interest in its only asset. The bankruptcy judge also found, based on his previous rulings, that the proposed payment in full to one group of unsecured claimants (the trade creditors), while affording the mortgagee's unsecured deficiency claim virtually no recognition, clearly discriminated unfairly in a manner forbidden by 11 U.S.C. 1129(b)(1).

For purposes of this opinion, we will assume that a respectable appellate question has been raised concerning whether the trade creditors constitute a separate class for purposes of approving the plan.[4] Regardless of that, it appears extremely unlikely that the plan proposed can ultimately be declared to be fair and equitable under the circumstances described. We need not pass upon that issue at this time, however, since the only issue presently before the Court is the propriety of requiring security for a stay pending appeal.

Unquestionably, a secured creditor has the right to be protected against any decline in value that the collateral could suffer if an automatic stay was in effect since, absent the stay, the creditor would foreclose, preventing any further loss in the value of the security. This is true even when it is a matter of losing the use of money that is tied up in real estate where the creditor could reinvest the proceeds at a greater return under current interest rates. *In re Monroe Park*, 17 B.R. 934 (D.Del. 1982).

---

**3.** By offering to pay the trade creditors in full, the debtor has made a technical error because if paid in full, they would not constitute an "impaired" class and their approval of the plan of arrangement would be meaningless. This technical error, however, could be easily corrected and is not a critical point in considering the position of the parties.

**4.** We do note, however, that the trade creditors have been maneuvered into a separate class by the debtor solely for purposes of being able to make this argument.

The debtor argues that the net rent proceeds will equal any lost interest and that the trustee is not entitled to the net rent and interest as well. The problem with this argument is that the Bankruptcy Court had earlier determined, interpreting the mortgage documents and the applicable New Jersey law, that the rent proceeds had been validly assigned to the mortgagee as additional collateral. Indeed, in the New Jersey proceedings after March 10, 1982, the trustee has asserted his right to these proceeds directly.

■ The $400,000 required as security amounts to only a one-half year's interest on the minimum secured value of the mortgaged property at New Jersey's statutory interest rate upon foreclosed judgments (12% per annum). Clearly, the requiring of a bond representing only slightly more than six percent of the value of the collateral is not unreasonable. If the debtor can fund $700,000 in new money to float its tax shelter incentive reorganization plan, it can also raise a bond in the amount of $400,000.

■ A stay involves extraordinary relief and the discretion of the court. *Resident Advisory Board v. Rizzo*, 429 F.Supp. 222, 224 (D.Pa.1977). This circuit has formulated the elements required for a stay pending appeal in various fashions. *Compare Eastern Airlines v. Civil Aeronautics Board*, 261 F.2d 830 (2d Cir. 1958) *with Washington Metropolitan Area v. Holiday Tours*, 559 F.2d 841, 844 (D.C.Cir.1977) (relying on *Charlie's Girls, Inc. v. Revlon*, 483 F.2d 953, 954 (2d Cir. 1973); *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)). It is apparent, however, that taking even the easier standard, the granting of a stay could result in substantial harm to the trustee and it is questionable whether the debtor has truely shown that, without a stay, it will suffer irreparable injury.

■ Requiring a supersedeas bond is supported by the bankruptcy rules and by traditional equity practice in federal courts. *See Graysonia-Nashville Lumber Co. v. Goldman*, 260 F. 600, 605–06 (8th Cir. 1919);

*American Trust Co. v. Speers Sand & Clay Works, Inc.*, 60 F.2d 994 (D.Md.1932). Moreover, the bankruptcy judge's decision concerning the need for and appropriate amount of the bond is entitled to considerable weight. *In re Wymer*, 5 B.R. 802 (Bkrtcy.App. 9th Cir. 1980). Consequently, considering all of the circumstances recited above, the debtor's motion must be denied.

SO ORDERED.