In re Hans B. CANTRUP and June Allen Moss Cantrup, Debtors.

FORT WORTH MORTGAGE CORPORATION and Illinois/Service Federal Savings and Loan Association, Plaintiff,

v.

Hans B. CANTRUP and June Allen Moss Cantrup, Debtors, Spencer Schiffer, Chief Operating Officer, Defendants.

FORT WORTH MORTGAGE CORPORATION and Farmers and Merchants Bank, Plaintiffs,

v.

Hans B. CANTRUP and June Allen Moss Cantrup, Debtors, Spencer Schiffer, Chief Operating Officer, Defendants.

FORT WORTH MORTGAGE CORPORATION and Peoples Savings Bank of New Britain, Plaintiffs,

v.

Hans B. CANTRUP and June Allen Moss Cantrup, Debtors, Spencer Schiffer, Chief Operating Officer, Defendants.

FORT WORTH MORTGAGE CORPORATION and Hill Country Savings and Loan Bank Association, Plaintiffs,

v.

Hans B. CANTRUP and June Allen Moss Cantrup, Debtors, Spencer Schiffer, Chief Operating Officer, Defendants.

FORT WORTH MORTGAGE CORPORATION and Hill Country Savings and Loan Association, Plaintiffs,

v.

Hans B. CANTRUP and June Allen Moss Cantrup, Debtors, Spencer Schiffer, Chief Operating Officer, Defendants.

FORT WORTH MORTGAGE CORPORATION and Cambridge Savings and Loan Association, Plaintiffs,

v.

Hans Ban CANTRUP and June Allen Moss Cantrup, Debtors, Spencer Schiffer, Chief Operating Officer, Defendants.

Adv. Nos. 83 J 1394, 83 Mc 1396–83 Mc 1398, 83 J 1399.

United States Bankruptcy Court, D. Colorado.

Sept. 9, 1983.

Carl Eklund, and Hal Lewis, of Smart, Defurio, Brooks & Eklund, Denver, Colo., for plaintiffs.

James Holden, and Elizabeth Greenberg, of Sherman & Howard, Denver, Colo., for defendants.

Before JOHN F. McGRATH and RO-LAND J. BRUMBAUGH, Bankruptcy Judges.

## ORDER DISMISSING COMPLAINTS

These matters came on for hearing on August 26, 1983, on the Plaintiffs' Complaints for Relief from Stay. On July 28, 1983, the parties in each case filed a Stipulation which resolved all issues between them save one. The parties agreed that the Plaintiffs' liens on the subject properties exceeded the values of each of the properties, and thus the Defendants have no equities. They also agreed that the Plaintiffs are entitled to adequate protection for their interests to the extent that a continuation of the automatic stay results in a decrease in the value to the Plaintiffs' various interests. Thus, Spencer Schiffer, Chief Operating Officer of the Cantrup estate, agreed to properly maintain each of the properties. The parties also agreed that the value of each of the subject properties was neither increasing nor decreasing. The parties could not agree on whether or not the Plaintiffs were also entitled to periodic cash payments as additional adequate protection. The parties framed this issue as follows:

Is the holder of an undersecured claim entitled to receive adequate protection for the secured portion of its claim, to compensate the claim holder for the loss of the use of its money resulting from continuation of the automatic stay? In other words, does the stay impair the "use value of money" and thereby result in an "opportunity cost" to the claim holder which must be compensated as part of an offer of adequate protection?

■ Plaintiffs have refrained from asserting that 11 U.S.C. § 361 is unconstitutional because it does not specifically provide for such payments. They argue, instead, that § 361 can fairly be construed to require such payments and thus the Constitutional question may be avoided. That is a primary rule on statutory construction. As the Supreme Court said in *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932) the ". . . cardinal principle of this Court will first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided."

■ I think it fair to say that the cases of *In re American Mariner Ind., Inc.,* 10 B.R. 711 (Bkrtcy.C.D.Cal.1981), 27 B.R. 1004 (Bkrtcy.App.Pan.Cal., 9th Cir.1983); *In re Alyucan Interstate Corp.,* 12 B.R. 803 (Bkrtcy.Utah 1981); and, *In re South Village, Inc.,* 25 B.R. 987 (Bkrtcy.Utah 1982), have adequately and forcefully dispelled any doubts as to whether or not Congress intended "adequate protection" under § 361 to include payments to undersecured creditors for the loss of the use of their money resulting from the automatic stay under § 362. It did not.

■ We are thus faced with the question of whether § 361, as here interpreted, is violative of the due process clause of the Fifth Amendment. Being mindful of the requirement that whenever the constitutionality of a federal statute is drawn in question, the Court is to certify such fact to the Attorney General and permit the United States to intervene for argument on the

question (*see* 28 U.S.C. § 2403), in light of this Court's opinion, *infra,* such intervention is deemed unnecessary.

Relying on the case of *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), Plaintiffs argue that they have been deprived of certain property rights, protected by the Fifth Amendment, by imposition of the automatic stay provided for in § 362, to-wit: The right to foreclose, liquidate their collateral, and reinvest their capital.

In the *Radford* case, the Supreme Court held that the Frazier-Lemke Act was unconstitutional because it deprived mortgagees of just such rights.

This Act, enacted in response to the economic plight of farmers, occasioned by the Depression of the 1930's, provided *inter alia,* that:

1. The debtor, if the mortgagee agreed, could purchase the property at its present appraised value by agreeing to make deferred payments as follows: 2½% in two years; 2½% in three years; 5% in four years; 5% in five years; and the balance in six years with all deferred payments to draw interest at 1% per annum.

2. If the mortgagee did not agree to the above, the debtor could require the bankruptcy court to stay all proceedings for five years during which time the debtor would remain in possession of the property provided he paid reasonable rental annually. The first rental payment was not due for six months and all rental payments were to be distributed to secured and unsecured creditors as their interest appeared under the provisions of the existing bankruptcy laws. There was no provision for the payment of taxes and insurance except as they may be paid from the rentals received.

Prior to, or at the end of, the five year period, the debtor could purchase the property for its appraised value free and clear of the mortgagee's lien.

These provisions were so confiscatory that the Supreme Court held the first Frazier-Lemke Act void.

That decision was entered May 27, 1935, and on August 28, 1935, the new Frazier-Lemke Act became effective. The government of the nation was obviously much more efficient then than at the present time for it has been over 14 months that this Court has languished in the aftermath of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), with no resolution of its jurisdictional hiatus in sight.

The new Act came before the Supreme Court in *Wright v. Vinton Branch of Mountain Trust Bank of Roanoke, Va., et al.,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937). In the *Wright* case, Justice Brandeis began by clarifying his opinion in the *Radford* case, to-wit:

> The question in the *Radford* Case did not question the power of Congress to offer to distressed farmers the aid of a means of rehabilitation under the bankruptcy clause. The original Frazier-Lemke Act was there held invalid solely on the ground that the bankruptcy power of Congress, like its other great powers, is subject to the Fifth Amendment; and that, as applied to mortgages given before its enactment, the statute violated that Amendment, since it effected a substantial impairment of the mortgagee's security. The opinion enumerates five important substantive rights and specific property which had been taken. *It was not held that the deprivation of any one of these rights would have rendered the Act invalid, but that the effect of the statute in its entirety was to deprive the mortgagee of his property without due process of law....* [Emphasis added.]

300 U.S. at 456, 457, 57 S.Ct. at 559.

Of the five enumerated rights that the first Act impaired, only two were found not to be specifically preserved in the new Act:

1. The right to determine when a foreclosure sale would occur; and,

2. The right to control the property during the period of default and to have the rents and profits collected by a

receiver for the satisfaction of the debt.

Justice Brandeis held that since the three-year stay provided for by the new Act was not absolute and could be terminated at an earlier time, that such a temporary infringement of that right to determine when a foreclosure sale would be held was not such a taking as to require compensation under the Fifth Amendment.

As to the right to control the property and have the rents and profits collected by a receiver for satisfaction of the debt, the Court noted that the new Act provided for the payment of a reasonable rental, which was first to be applied to taxes and upkeep with any remainder to be distributed to the creditors as their interests appear. In the cases *sub judice,* the parties have stipulated that the taxes, insurance, and upkeep shall be currently maintained by the Debtors' estate.

As Justice Brandeis stated in the *Wright* case, "The question which the objections raise is not whether the [new] Act does more than modify remedial rights. It is whether the legislation modifies the secured creditor's rights, remedial or substantive, to such an extent as to deny the due process of law guaranteed by the Fifth Amendment." 300 U.S. at 470, 57 S.Ct. at 565. It is thus a question of degree of modification rather than the fact of modification that is controlling. In the within cases, and under the current bankruptcy statutes, the secured creditors retained four of the five rights enumerated in the *Radford* case:

1. Their liens are retained until the debt secured thereby is paid.

2. The right to realize upon their security at a public judicial (or in this instance a public trustee's) sale.

3. The right to bid in at such sale to protect their interests.

4. The right to have the property protected during the period of default which the *Wright* case held was tantamount to the right to control the property and have the rents and profits applied.

Thus, here as in *Wright,* the only modification of the Plaintiffs' rights occurs in the delay in choosing the timing of a foreclosure sale. Since, under § 362, the Court may, for several and varied reasons, terminate the automatic stay, at any time, these cases fall clearly within the *Wright* decision.

Plaintiffs argue that the key distinction between *Radford* and *Wright* is that in *Wright* the Act provided for the payment of reasonable rent (and possibly even some principal) during the term of the stay. This argument cannot stand because the original Frazier-Lemke Act also provided for rental payments.

The "key" difference in the two Frazier-Lemke Acts was that the first Act took almost all of the "bundle of rights" that a secured creditor held in property while the second Act preserved those rights with the exception of a modification to one—some period of delay in having a foreclosure sale. That modification was, so held the Supreme Court, not substantial enough to deny the creditors due process under the Fifth Amendment.

Thus it is here. In light of the Stipulation entered into by the parties, the Plaintiffs are, at this time, not entitled to relief from the automatic stay under the provisions of § 362(d). Accordingly, it is

ORDERED that the within cases be, and hereby are, dismissed, without prejudice, each party to bear its own costs.