**In re B & W TRACTOR COMPANY, INC., Debtor.**

**Bankruptcy No. S–83–00428–5.**

United States Bankruptcy Court, E.D. North Carolina.

April 6, 1984.

J. Larkin Pahl, Raleigh, N.C., for debtor.

Mark C. Kirby, Raleigh, N.C., Ford Motor Credit Corp.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

This matter is before the Court upon the request of Ford Motor Credit Corporation ("FMCC"), for the payment as an administrative expense of $13,198.24 representing missed interest payments under an "adequate protection agreement."

### BACKGROUND

The issues raised by FMCC's request for administrative expenses are not unique to this case. When a chapter 11 case is filed, the Debtor invariably continues to operate its business (11 U.S.C. § 1108) as a debtor-in-possession (11 U.S.C. § 1101(1)). As debtor-in-possession, the debtor has the powers of a trustee (11 U.S.C. § 1107) and theoretically, at least, is acting for the benefit of the debtor, its owners, and its creditors.

Frequently, there is virtually no supervision of the debtor's day-to-day operation. In districts which do not have the pilot U.S. trustee program,[1] there typically will be no trustee or examiner to monitor the debtor's day-to-day operation or to scrutinize the debtor's dealings with creditors. (11 U.S.C. § 1104).

Under the Bankruptcy Reform Act of 1978, the bankruptcy judge has reduced administrative responsibility for supervising cases.[2] While the Court does retain

---

1. The U.S. Trustee has the responsibility of supervising administration of chapter 11 cases. 28 U.S.C. § 586(a)(3); Bankruptcy Rule X–1007. The pilot trustee program is available in the:
   (1) District of Maine, District of New Hampshire, District of Massachusetts, and District of Rhode Island.
   (2) Southern District of New York.
   (3) District of Delaware and District of New Jersey.
   (4) Eastern District of Virginia and District of Columbia.
   (5) Northern District of Alabama.
   (6) Northern District of Texas.

   (7) Northern District of Illinois.
   (8) District of Minnesota, District of North Dakota, District of South Dakota.
   (9) Central District of California.
   (10) District of Colorado and District of Kansas. (28 U.S.C. § 581).

2. The referee's dual role of administrator and judge under the Bankruptcy Act of 1898 was the subject of much criticism. See *Report of Commission on the Bankruptcy Laws of the United States,* H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Pt. I, p. 93.

some administrative responsibility,[3] the burden of supervising the debtor's day-to-day affairs in chapter 11 cases falls upon the creditors' committee.

A creditors' committee is appointed in every chapter 11 case (11 U.S.C. § 1102), but most creditors' committees, at least in this district, are totally inactive and ineffective.[4] Consequently, with no trustee, no direct court supervision, and with unconcerned creditors, the debtor may operate virtually unsupervised.

While unsecured creditors may be apathetic in chapter 11 cases, secured creditors are not. In fact, the filing of a chapter 11 petition often signals the outbreak of a battle between the debtor, who wishes to use and retain collateral, and the secured creditor, who wishes to repossess and sell the security. Frequently, a truce is reached between the debtor and the secured creditor in the form of an "adequate protection agreement." The terms of adequate protection agreements are limited only by the imaginations of the attorneys who draft them. In addition to providing for periodic payments or replacement liens, the agreement may include provisions relating to inspection, insurance, limitations on the use of collateral, maintenance of collateral levels, sales projections, and virtually any covenant which is usually found in commercial loan agreements, including

remedies upon default (e.g., appointment of trustee or examiner, dismissal, conversion, lifting of the stay). Some adequate protection agreements contain acknowledgements that the creditor's documents are properly perfected, that the collateral values exceed the loan balance, and that the debtor has no claim or cause of action against the creditor. Although the chapter 11 debtor has an impressive arsenal of weapons,[5] the secured creditor is by no means defenseless.[6] The debtor's survival may depend upon its ability to satisfy its secured creditor and the temptation may exist to make concessions which may be to the detriment of unsecured creditors.[7] Without proper supervision by a trustee or an active creditors' committee, these concessions often go unchallenged.

The adequate protection agreement may be presented to the Court in the context of a settlement of a motion to lift the automatic stay filed by the secured creditor. There may be no notice to unsecured creditors and no hearing. Without opposition and without a hearing, it is indeed possible that an adequate protection agreement can unfairly benefit the secured creditor to the disadvantage of others.

## FACTS

B & W Tractor Company, Inc. filed a petition for relief under chapter 11 on

---

**3.** *In re Gusam Restaurant Corporation,* 32 B.R. 832, 10 B.C.D. 1320 (Bkrtcy. ED NY 1983), and *In re Nikron, Inc.,* 27 B.R. 773, 10 B.C.D. 335 (Bkrtcy. ED MI 1983). Bankruptcy Rule 2015 requires the debtor to file periodic reports and many districts use case administrators to monitor chapter 11 cases. In the Eastern District of North Carolina, there is no case administrator.

**4.** This district presently has 250 pending chapter 11 cases of which less than 5% have active creditors' committees.

**5.** The debtor's weapons include: the automatic stay (11 U.S.C. § 362(a)); the ability to operate (11 U.S.C. §§ 1107–1108); use of collateral (11 U.S.C. § 363); ability to pledge collateral (11 U.S.C. § 364(d)); turnover power (11 U.S.C. § 542); "lien-free" post-bankruptcy assets (11 U.S.C. § 552); avoiding powers (11 U.S.C. § 1107); pre-bankruptcy setoff penalty (11 U.S.C. § 553); assessing costs against secured creditors (11 U.S.C. § 506(c)); and the "cramdown" (11 U.S.C. § 1129(b)).

**6.** The secured creditor's weapons include: the Fifth Amendment to the U.S. Constitution; the right to ask for adequate protection (11 U.S.C. § 361); the right to an expedited hearing on a motion to lift the automatic stay (11 U.S.C. § 362(d) and (e), Bankruptcy Rule 4001(b)); ability to request a limitation on use of collateral (11 U.S.C. § 363(e)); automatic prohibition of debtor's use of "cash collateral" (11 U.S.C. § 363(c)(2)); appointment of a trustee or examiner (11 U.S.C. § 1104); dismissal or conversion (11 U.S.C. § 1112); right to vote against plan (11 U.S.C. § 1126); objections to confirmation (11 U.S.C. § 1128(b)); and right of creditor to propose plan (11 U.S.C. § 1121(c)).

**7.** The temptation is especially great when the debtor is a closely held corporation and management has guaranteed the debtor's obligations.

March 4, 1983. A creditors' committee was appointed but has not been active. No trustee was appointed and the debtor continues to operate the business as debtor-in-possession.

B & W Tractor Company, Inc. is a Ford equipment dealer in Smithfield, North Carolina. It operates under a franchise from Ford Motor Company and sells tractors and farm equipment. FMCC finances the tractor and equipment inventory under a "floor plan" arrangement.

The Debtor's schedules, filed on April 18, 1983, listed total debts of $116,282.67 and total assets, including "Ford parts and implements" of $59,000.00 valued at $81,-200.00. On May 5, 1983 the Debtor's schedules were amended to add the secured claim of FMCC in the amount of $184,-487.95. The schedules were again amended on August 18, 1983 to reflect additional inventory of non-Ford parts valued at $39,-011.90.

In May of 1983 FMCC and the Debtor entered into a Consensual Protective Order which called for the Debtor to: 1) continue to sell the inventory; 2) to forward the proceeds of sales to FMCC; 3) allow inspection of the collateral; and 4) pay interest on a monthly basis as required by the "floor plan" arrangement. The application asking the Court to approve the agreement included a list of collateral valued on a cost basis of over $180,000.00. The amount of the debt to FMCC in May, 1983, according to FMCC, was approximately $135,000.00. No notice was given to creditors and no hearing was held. The Court approved the Consensual Protection Order on May 24, 1983, but in doing so, deleted a provision which said that the interest would be "treated as an administrative expense."

The Debtor continued to operate but never made an interest payment under the agreement. On September 26, 1983, FMCC filed a request to recover the missed interest payments as a cost of administration under 11 U.S.C. § 503(a).

Shortly after the Consensual Protection Order was entered, the Debtor and Ford Motor Company became involved in a dispute concerning the Debtor's assumption of the Ford franchise agreement. At issue was the Debtor's ability to provide adequate assurance of future performance. In September, Ford agreed to permit assumption of the franchise if the Debtor met certain conditions including infusion of new capital and payment of all past due interest payments to FMCC under the Consensual Protection Order. The Debtor never met the conditions, never assumed the franchise agreement and on January 10, 1984, with the consent of the Debtor, the stay was lifted to allow FMCC to pursue its collateral. FMCC sold the collateral for $105,-000.00 and now has a deficiency of approximately $32,000.00 (including the missed interest payments).

The Debtor agrees that FMCC is entitled to an administrative expense priority for the delinquent interest payments,[8] and a consent order was tendered to the Court for approval. A hearing was held to determine FMCC's request, all creditors were notified, no objections were raised, and no creditors appeared.

### DISCUSSION AND CONCLUSIONS

11 U.S.C. § 503(a) provides that an entity "may file a request for payment of an administrative expense." The procedure for making such a request is left to the Bankruptcy Rules.[9] While there is no Bankruptcy Rule which relates specifically to the type of administrative expense requested by FMCC, consideration of the well established procedures for examining requests for attorney's fees, the most prevalent administrative expense, is helpful.

■ A request for administrative expenses, unlike a proof of claim, is not "deemed allowed" in the absence of an

---

**8.** FMCC and the Debtor agree that $10,325.47 is entitled to treatment as an administrative expense but FMCC's entitlement to $2,872.77 is disputed.

**9.** *Collier on Bankruptcy,* Para. 503.01, p. 503–3 (15th ed. 1983).

objection[10] and does not constitute *prima facie* evidence of the validity and amount of the request.[11]

■ With respect to requests for attorney's fees, the applicant has the burden of establishing the reasonableness of the request. *In re Rosen*, 25 B.R. 81 (Bkrtcy.D. SC 1982); *In re Investment Bankers, Inc.*, 30 B.R. 883 (Bkrtcy.D. CO 1983); *In re Art Shirt Ltd., Inc.*, 30 B.R. 318 (Bkrtcy. ED PA 1983); and *In re Underground Utilities Construction Company, Inc.*, 13 B.R. 735 (Bkrtcy.SD FL 1981). Furthermore, the Court has the duty to examine the reasonableness of attorney's fees even in the absence of an objection. *In re Hamilton Hardware Co., Inc.*, 11 B.R. 326, 7 B.C.D. 963 (Bkrtcy. ED MI 1981); *In re Darke*, 18 B.R. 510, 8 B.C.D. 1059 (Bkrtcy.ED MI 1982); and *In re Penn Fruit Co., Inc.*, 26 B.R. 81 (Bkrtcy.ED PA 1982).

■ These principles are equally applicable to the examination of requests for administrative expenses arising from *ex parte* adequate protection agreements. The applicant has the burden of showing that the request is justified and the Court has the duty to examine the reasonableness of the request, even in the absence of an objection.

■ *Ex parte* adequate protection agreements should receive close scrutiny. When examining administrative claims arising from such agreements, the Court should consider 1) whether the agreement is consistent with the intent and purpose of the Bankruptcy Code; 2) whether the conduct of the secured creditor has been inequitable; and 3) whether effecting the agreement would create an inequitable result.

Validity of Agreement

■ Unlike the cross-collateralization financing arrangement in *In re Texlon Corporation*, 596 F.2d 1092 (2d Cir.1979), most adequate protection agreements do not run "contrary to the spirit" of the bankruptcy laws.[12] In fact, secured creditors are *entitled* to some form of adequate protection in every chapter 11 case. The adequate protection, however, must not substantially exceed that to which the secured creditor is entitled.

It is not entirely clear from the evidence before the Court the extent to which FMCC's interest was required to be "adequately protected." The exhibit to the Consensual Protection Order showed an inventory value of $180,000.00 but the Debtor's schedules reflected an inventory value of only $59,000.00. If FMCC's debt of $135,000.00 in May, 1983 was "oversecured" by inventory worth $180,000.00, an adequate protection agreement requiring interest payments would be appropriate because fully secured creditors are entitled to interest under 11 U.S.C. § 506(b). If FMCC was an "undersecured" creditor, however, its entitlement to adequate protection including interest is not as clear.

Many courts have held that adequate protection need not include "lost opportunity costs" (i.e., interest) on "undersecured" secured claims.[13] There are also cases which hold that adequate protection must

---

10. 11 U.S.C. § 502(a).

11. Bankruptcy Rule 3001(f).

12. *Texlon*, p. 1098. Not all cross-collateralization agreements are invalid. See *In re Antico Manufacturing Co., Inc.*, 31 B.R. 103 (Bkrtcy.ED NY 1983); *In re Vanguard Diversified, Inc.*, 31 B.R. 364 (Bkrtcy. ED NY 1983); Weintraub & Resnick, "Cross-Collateralization of Pre-petition Indebtedness as an Inducement for Postpetition Financing: A Euphemism Comes of Age," 14 U.C.C.L.J. 86 (1981) and Ordin, "In re Texlon Corporation: Finality of Order of Bankruptcy Court," 54 Am.Bankr.L.J. 173 (1980).

13. *In re South Village, Inc.*, 25 B.R. 987, 9 B.C.D. 1332 (Bkrtcy.D.UT 1982); *In re American Mariner Industries, Inc.*, 27 B.R. 1004, 10 B.C.D. 281 (BAP–9 1983); *In re Pine Lake Village Apartment Co.*, 19 B.R. 819 (Bkrtcy. SD NY 1982); Motion for reargument den., 21 B.R. 478 (Bkrtcy. SD NY 1982); Motion to modify den., 21 B.R. 395 (SD NY 1982); *In re Shriver*, 33 B.R. 176, 11 B.C.D. 93 (Bkrtcy. ND OH 1983); *In re Cantrup*, 32 B.R. 1004, 10 B.C.D. 1372 (Bkrtcy. CO 1983); *In re Saypol*, 31 B.R. 796, 10 B.C.D. 1057 (Bkrtcy. SD NY 1983); *In re Briggs Transportation Co.*, 35 B.R. 210 (Bkrtcy. MN 1983).

include lost opportunity costs for undercollateralized lenders to preserve the benefit of the creditor's bargain.[14] Adequate protection is a flexible concept: the meaning "is born afresh out of the 'reflective equilibrium' of each decision." *In re Alyucan Interstate Corp.*, 12 B.R. 803, 805, 7 BCD 1123, 1124 (Bkrtcy. UT 1981). There may be cases in which adequate protection must include lost opportunity costs and others in which it need not.[15]

Although the burden of establishing the legitimacy of the request for administrative expenses is upon the applicant and although the evidence before the Court in this uncontested matter is less than clear, it does not appear that the Consensual Protection Order was an abuse of the bankruptcy laws.

CONDUCT OF FMCC

The Consensual Protection Agreement required interest payments to be made to FMCC commencing in May, 1983. Although the Debtor never made the first payment, FMCC waited until September, 1983 to request the unpaid interest as an administrative expense. In some situations it would be entirely unfair to allow the beneficiary of an adequate protection agreement to enhance its position through procrastination at the expense of unsecured creditors. In this case, FMCC's forebearance was the result of its reliance upon realistic promises of new capitalization and represented a *bona fide* attempt by FMCC to assist the rehabilitation of the Debtor.

Hindsight Test

■ When, in considering a request to approve attorney's fees, the Court finds that a prior fee agreement was "improvident", the fee arrangement can be changed. (11 U.S.C. § 328(a)). The Court should also disregard or modify a prior adequate protection agreement when to enforce the agreement would lead to an inequitable result.

■ If a secured creditor's adequate protection is determined at a later date to be "inadequate", the creditor is given a priority ahead of all costs of administration (11 U.S.C. § 507(b)). Conversely, if, with the benefit of hindsight, an *ex parte* adequate protection agreement is determined to be "too adequate" the agreement should be modified or set aside.[16]

■ In this case there is no evidence to suggest that enforcement of the adequate protection agreement would be inequitable.

FMCC has not asked that its claim be given 11 U.S.C. § 507(b) status and therefore its claim shall not be given that priority. Accordingly,

IT IS HEREBY ORDERED that the request for administrative expenses of Ford Motor Credit Corporation in the amount of $10,325.47 is ALLOWED. A determination regarding FMCC's entitlement to the disputed $2,872.71 is left to another day.

---

**14.** *In re Monroe Park,* 17 B.R. 934 (D.C. DE 1982); *In re Virginia Foundry Co., Inc.,* 9 B.R. 493 (D.C. WD VA 1981); *In re Anchorage Boat Sales, Inc.,* 4 B.R. 635 (Bkrtcy. ED NY 1980); dissent in *American Mariner Industries, Inc.,* 27 B.R. 1004, 1014, 10 B.C.D. 281, 287 (BAP–9 1983).

**15.** In *In re C.F. Simonin's Sons, Inc.,* 28 B.R. 707, 10 B.C.D. 343 (Bkrtcy. ED NC 1983), this Court found that adequate protection should include interest on the liquidation value of inventory and a manufacturing facility when the chapter 11 debtor's chances of successful rehabilitation are not good; in the same case lost opportunity costs were not required as part of the adequate protection for other collateral.

**16.** See *In re Callister,* 15 B.R. 521, 8 B.C.D. 446 (Bkrtcy.D. UT 1981), Appeal dism. 673 F.2d 305, for a good discussion of the application of 11 U.S.C. § 507(b).